## CLEMENTS v. WILLIAMS et al.

### No. 8668.

Court of Civil Appeals of Texas. Austin.
April 19, 1939.

Walker & Hammett, of Lampasas, and Thos. C. Ferguson, of Burnet, for appellant.

J. J. Byrne, of Lampasas, for appellees.

BAUGH, Justice.

Appellant sued appellees in trespass to try title, and for damages, to certain described property situated in the City of Lampasas, Texas. The defendants pleaded not guilty, and by cross-action Jesse Williams sought to have the deed held by Clements to said property cancelled, to have notes executed by him to Clements declared usurious, to have all payments made by him prior to two years before suit was filed credited on the principal debt, and to recover as penalty double the amount paid by him within such two-year period. Trial was to a jury on special issues and upon their answers thereto the court rendered judgment against Clements on his suit for title, quieted title in Williams to said property, and rendered a money judgment in favor of Williams against Clements for $416.66; hence this appeal. We have withheld decision herein until the usury issue was determined by the Supreme Court of Texas in Temple Trust Co. v. Haney, Tex.Civ.App., 103 S.W.2d 1035, (affirmed 107 S.W.2d 368) and companion cases pending in that court.

The appellee, Jesse Williams, purchased the property here involved in 1920 and executed in part payment therefor a vendor's lien note for $1,200, payable to A. G. Clark, due September 29, 1924, bearing 8% interest. A. G. Clark died in 1925, and his wife, executrix and beneficiary under his will, assigned said note and lien to Elbert Clements on April 16, 1927, for a consideration of $925. Williams also executed a renewal and extension agreement, extending payment thereof for a period of five years from April 5, 1927, and at the same time executed a renewal note for $1,457.50, payable in 53 monthly installments of $27.50 each, and providing that failure to pay any installment when due would mature the entire note and authorize foreclosure of the lien. Williams, up to February, 1930, paid 33 monthly installments aggregating $907.50, and thereafter interest on the balance up to January 1, 1932. On February 2, 1934, Williams executed another note payable to Clements, due in six months, for $960.24, and a deed of trust on the property here involved to secure its payment, bearing 10% interest from September 17, 1933, and reciting that it was in renewal and extension of the balance due on the original vendor's lien note executed by Williams in 1920. On April 12, 1935, Williams executed another note to Clements for $1,200, due six months after date, and a deed of trust on the land here involved, and other lands, to secure its

payment, reciting that this note also was given in renewal and extension of Williams' original vendor's lien note.

It appears that, in addition to the vendor's lien note originally executed by Williams and acquired by Clements in 1927, Williams had prior thereto been indebted to Clements, which indebtedness was evidenced by separate and distinct notes, which had been partially paid and renewed and extended from time to time; and that the total amount of all indebtedness claimed by Clements against Williams on December 16, 1935, amounted to $1,354.09. On that date Williams executed a deed to Clements to the property here involved, and in addition included Williams' undivided interest (inherited) in 400 acres of land in Lampasas County, and placed same with a written escrow agreement in the First National Bank at Lampasas. This agreement provided that if Williams paid Clements the $1,354.09 prior to January 12, 1936, the deed should be returned to Williams. If not, it was to be delivered to Clements. Williams was unable to pay Clements before January 12, 1936, and on January 13, 1936, the bank delivered said deed to Clements. This deed was never recorded, and its contents not definitely shown.

Subsequent to January 13th, while said deed was in the possession of Clements, Williams' sister purchased his interest in the 400 acres, whether from Clements or Williams is not clear, for $600. Thereupon, Clements delivered to her the deed of December 16, 1935, that Williams had made to him, Williams executed to his sister a deed conveying to her his undivided interest in the 400 acres of land; and on February 21, 1936, executed and left with Tom Higgins a deed to Clements to the city property here involved for a recited cash consideration of $758.09. This deed was recorded by Clements on September 3, 1936.

Williams pleaded and testified that the deed of December 16, 1935, was intended only as a mortgage. Clements testified that it was intended as, and accepted by him as, an absolute conveyance of said property in settlement of Williams' notes to him, and that he indorsed such settlement on the notes at the time. The notes introduced in evidence showed the indorsement "settled by deed."

Williams also pleaded that the deed of February 21, 1936, was intended only as a mortgage; that it was left with Tom Higgins pending adjustment of his indebtedness to Clements; that its delivery to Clements was never authorized by him. He testified to the same effect and Higgins also testified that this instrument was left in his office, and that he had never delivered nor authorized delivery of it to Clements. Thereafter Williams made certain payments to Clements, which Clements testified were payments of rents; and which Williams testified were payments on his indebtedness to Clements. Having ceased making any further payments in 1937, Clements brought this suit.

Two special issues were submitted to the jury; in answer to which they found: 1. That the deed of February 21, 1936, was not to be delivered to Clements, but was to remain in possession of J. Tom Higgins, pending an adjustment of accounts between Williams and Clements. 2. That the true amount due on the vendor's lien note at the time Clements purchased it in 1927 was $1,008.33. The appellant requested the submission of an issue inquiring whether the deed of December 15, 1935, delivered to Clements and thereafter surrendered by him to Williams' sister was intended as an absolute conveyance or only as a mortgage, which request the trial court refused, and which refusal appellant assigns as error.

■ Appellant in his trespass to try title suit, did not plead his title specifically. When he introduced in evidence the deed from Williams to him, dated February 21, 1936, same being absolute on its face, and the common source of title as between him and Williams being agreed to, he showed a prima facie right of recovery. Williams pleaded and testified that this instrument was intended only as a mortgage and that delivery thereto to Clements had never been authorized. In rebuttal, appellant proved, in addition to the deed of February 21, 1936, the execution by Williams and delivery to him by the bank, under its written authority to do so, of a deed to this property, and other property, dated December 15, 1935, which was, according to his testimony, intended as, and accepted by him as, an absolute conveyance of title. Williams did not deny its execution nor that he authorized the bank to deliver it to Clements, but testified that it was intended only as a mortgage. Clements testified that the surrender by him of the December 15, 1935, instrument which had conveyed to

him both the city property and Williams' interest in the 400 acres of land, after Williams' sister had purchased the acreage property, was done so that he (Clements) would not have to make a deed to her; and that Williams' February 21, 1936, deed to him to the city property only, was merely in lieu of the December 15, 1935, deed.

Under these facts and circumstances, the trial court erred in not submitting to the jury the issue requested by appellant. If the deed of February 21st was never legally delivered, as the jury in effect found, it did not as an independent instrument become effective to convey title. 14 Tex.Jur. Sec. 59, p. 823. If, however, the deed of December 15th from Williams, delivery of which to Clements by the bank on January 13, 1936, was not denied, was intended as a conveyance and not as a mortgage, then it effectively vested title to said property in Clements of which he could be divested only in a manner authorized by law. And a mere surrender of a duly executed and delivered deed back to the grantor, or the destruction of it, will not constitute a divestiture of title out of the grantee. Cooper v. Hinman, Tex.Com.App., 235 S.W. 564; Lott v. Van Zandt, Tex.Civ.App., 107 S.W.2d 761, 765; 14 Tex.Jur. Sec. 119, p. 894. No issue of estoppel as against Clements to assert such title is here presented in so far as the city property is concerned, and no question is raised as to the interest in the 400 acres which was also included in the December 15th deed.

If the deed of February 21st was ineffective to convey title because not delivered with the grantor's consent, then it is manifest we think that the deed of December 15th, if it were a valid conveyance, constituted an independent ground of recovery by appellant which he was entitled, under Ormsby v. Ratcliff, 117 Tex. 242, 1 S.W.2d 1084, to have submitted to the jury; and not one on which the court was presumed to have found in support of his judgment. The trial court's judgment indicates that no finding was made with reference to the deed of December 15th.

On the issue of usury the law seems now well settled. The $1,457.50 renewal note executed by Williams in 1927 and amortized in monthly payments of $27.50 per month, which included both principal and interest, because of the acceleration of maturity provision, which authorized the holder to mature the entire $1,457.50 upon default in the payment of any installment, was clearly usurious as a matter of law under Shropshire v. Commerce Farm Credit Corp., 120 Tex. 400, 30 S.W.2d 282, 39 S.W.2d 11, 84 A.L.R. 1269, and Temple Trust Co. v. Haney, Tex. Civ.App., 103 S.W.2d 1035, affirmed by Supreme Court in 107 S.W.2d 368, whether the principal due in 1927 when said note was executed, be treated as $1,233.33, as testified to by Clements, or $1,008.33, as found by the jury. Without calculating the items of principal and interest separately as represented by the monthly installments, Clements himself testified that in fixing such amounts interest on a principal of $1,233.33 at the rate of 10% was included. If the actual principal was only $1,008.33, it is manifest that usurious interest was in fact paid on each monthly installment. In either event Williams would be entitled to have all payments made by him up to two years prior to filing of this suit applied to the discharge of his principal debt; and to recover as penalty double the amount paid by him as interest within such two-year period. And he was entitled to recover such penalty if the interest paid exceeded 10% per annum, even though he had conveyed the lands to Clements in discharge of the usurious debt. Sugg v. Smith, Tex.Civ. App., 205 S.W. 363, writ refused; Palmetto Lbr. Co. v. Gibbs, 124 Tex. 615, 80 S.W. 2d 742, 745, 82 S.W.2d 376, 102 A.L.R. 474, 482.

But when the penalty statute (Art. 5073, R.C.S.1925) is invoked, and the borrower undertakes to recover double the amount paid by him within the previous two-year period, this statute, being penal, must be strictly construed; and his recovery predicated upon payments *as interest* amounting to more than 10% per annum on the actual principal. While usurious contracts are void as to interest, the borrower must repay the principal. Under the jury's findings, and the trial court's findings, up to two years prior to the filing of this suit, Williams had paid to Clements $975.50 on a true principal indebtedness found by the court to be $1,128.33; and that during such two-year period he had paid Clements $285. The court thereupon allowed a penalty of double the $285 so paid. Some of this $285, however, was manifestly paid as principal. It is also true that under the

installment note the monthly payments included both principal and interest. It is now settled that moneys paid as principal during such two-year period, will not, under the statute, incur such penalty; but only the sums paid as interest in excess of 10%. And where such payments include both principal and interest, the borrower must segregate the moneys paid as principal from those paid as interest and show that the latter were in excess of 10% on the actual principal. Haney v. Temple Trust Co., supra; Ingram v. Temple Trust Co., Tex.Civ.App., 108 S.W. 2d 306. The trial court therefore erred in allowing as penalty double the amount of the entire $285 paid by Williams during such two-year period.

For the reasons stated, the judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.