Jerry WHITNEY, et al., Respondents,

v.

ALLTEL COMMUNICATIONS, INC., Appellant.

No. WD 64196.

Missouri Court of Appeals, Western District.

July 5, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 30, 2005.

Application for Transfer Denied Nov. 1, 2005.

Brant M. Laue, Chadler E. Colgan, Co–Counsel, Kansas City, MO, James K. Lowry, Co–Counsel, St. Louis, MO, Matthew D. Turner, Co–Counsel, Jefferson City, MO, for appellants.

Matthew A. Clement, Timothy W. Van Ronzelen, Co–Counsel, Thomas G. Pirmantgen, Co–Counsel, Edward D. Robertson, Jr., Co–Counsel, Jefferson City, MO, Charles F. Speer, Co–Counsel, Overland Park, KS, for respondents.

Before ROBERT G. ULRICH, Presiding Judge, JAMES M. SMART, Jr., Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Alltel Communications, Inc. appeals from an order entered by the Circuit Court of Cole County denying its motion

to compel arbitration and to dismiss or stay the proceedings in a civil action brought against it by Jerry L. Whitney. For the following reasons, we affirm the trial court's decision.

Whitney is a wireless telephone customer of Alltel and has been since 1995. On November 27, 2002, Whitney filed a petition in the Circuit Court of Cole County asserting that Alltel had violated Missouri's Merchandising Practices Act, §§ 407.010 et seq.,[1] by improperly including a line item charge of $0.88 per month for a "Regulatory Cost Recovery Fee" on its billing statements to him in a manner that deceptively implied that it was a governmentally-mandated tax or charge. Whitney also asserted a claim of unjust enrichment based upon the same alleged conduct and sought certification to pursue the matter as a class action.[2]

Subsequently, Alltel filed a motion to compel arbitration and to dismiss or stay the proceedings, asserting that the provisions of Whitney's contract with Alltel mandated that any such claims be addressed through arbitration. The arbitration provision relied upon by Alltel was contained within some "Terms and Conditions" mailed to Whitney with his bill from Alltel on August 4, 2000. Those Terms and Conditions altered the terms of the contract and stated that a customer's use of Alltel services subsequent to receipt of the new Terms and Conditions would be deemed to constitute acceptance of those terms. Specifically, the arbitration provision stated:

> Any dispute arising out of this Agreement or relating to the Services and Equipment must be settled by arbitration by the American Arbitration Association. Each party will bear the cost of preparing and prosecuting its case. We will reimburse you for any filing or hearing fees to the extent they exceed what your court costs would have been if your claim had been resolved in a state court having jurisdiction. The arbitrator has no power or authority to alter or modify these Terms and Conditions, including the foregoing Limitations of Liability section.[3] All claims must be arbitrated individually, and there will be no consolidation or class treatment of any claims. This provision is subject to the United States Arbitration Act.

After the matter was briefed and argued by the parties, the trial court entered its order denying Alltel's motion to compel arbitration on May 14, 2004. In so doing, the trial court found that Whitney's claim under the Merchandising Practices Act and his unjust enrichment claim did not fall within the scope of the arbitration clause. The court stated that the actions challenged by Whitney related to Alltel's billing practices and did not involve a dispute "arising out of" the agreement and were not "related to" the services or equipment provided by Alltel. The court further concluded that, taken as a whole,

---

1. All statutory references are to RSMo 2000 unless otherwise noted.

2. Whitney also asserted a breach of contract claim, but that claim was later voluntarily dismissed.

3. The Limitations of Liability provision referred to in the arbitration provision stated, "OUR LIABILITY REGARDING YOUR USE OF THE SERVICE OR EQUIPMENT OR THE FAILURE OF OR INABILITY TO USE THE SERVICES OR EQUIPMENT IS LIMITED TO THE CHARGES YOU INCUR FOR SERVICES OR EQUIPMENT DURING THE AFFECTED PERIOD. THIS MEANS WE ARE NOT LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES (SUCH AS LOST PROFITS OR LOST BUSINESS OPPORTUNITIES), PUNITIVE OR EXEMPLARY DAMAGES, OR ATTORNEYS' FEES."

"the limitations contained within the arbitration provision make it unconscionable, and thus unenforceable, even if the claims were encompassed by the provision." Alltel brings five points on appeal from that order.

 Prior to addressing Alltel's claims, we must examine Whitney's challenge to this Court's jurisdiction over this appeal. "The right to appeal is purely statutory, and where a statute does not give a right to appeal, no right exists." *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 427 (Mo. banc 2003).

In its jurisdictional statement, Alltel asserts that this court has jurisdiction over this matter under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* Specifically, Alltel relies upon 9 U.S.C. § 16(a)(1)(A) and § 16(a)(1)(B). Those statutory provisions allow for an appeal to be taken from an order "(A) refusing a stay of any action under section 3 of this title" or "(B) denying a petition under section 4 of this title to order arbitration to proceed". Section 3 of the FAA deals with the enforcement of arbitration agreements

in pending lawsuits and requires that the "courts of the United States" grant a party's request for a stay of litigation pending completion of arbitration where the issue involved is subject to an arbitration provision.[4] *9 U.S.C. § 3.* Section 4 of the FAA requires "any United States district court" to entertain a petition for the enforcement of an arbitration agreement where a party has refused to arbitrate.[5] *9 U.S.C. § 4.*

Whitney contends that the provisions of the FAA allowing for appeals from the denial of a petition to order arbitration are not applicable to grant jurisdiction to this Court because the express language of Sections 3 and 4, from which Section 16 allows an appeal, only applies to federal courts. Whitney further claims that an appeal from the trial court's order is not proper under Missouri law because the order does not constitute a final judgment.

 On the facts of this case, we need not determine whether Sections 3 and 4 are applicable to a circuit court in this State, an issue which has not yet been addressed by either the Missouri Supreme Court or the United States Supreme Court.[6] *See Dunn Indus. Group*, 112

4. 9 U.S.C. § 3 states that "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

5. 9 U.S.C. § 4 provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty

of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement."

6. We do note, however, that the applicability of Sections 3 and 4 to state courts was recently and ably addressed by the California Supreme Court in *Cronus Investments, Inc. v. Concierge Services*, 35 Cal.4th 376, 25 Cal. Rptr.3d 540, 107 P.3d 217, 225–26 (2005), as follows:

The language used in sections 3 and 4 and the legislative history of the FAA suggest that the sections were intended to apply only in federal court proceedings. Section 4 refers to the "United States district court" and provides that it can be invoked only in a court that has jurisdiction under title 28 of the United States Code. This

S.W.3d at 433; *Volt Info. Scis., Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 477, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). An appeal from the denial of a motion to compel arbitration is specifically authorized under Missouri law. "Section 435.440.1, a part of the Missouri Uniform Arbitration Act, expressly grants the right to appeal orders denying an application to compel arbitration or granting an order to stay arbitration." *Dunn Indus. Group*, 112 S.W.3d at 427. This "'special statute' takes precedence over the general requirement in Rule 74.01 that a judgment is not final unless it disposes of all parties and issues in the case." *Dunn v. Security Fin. Advisors, Inc.*, 151 S.W.3d 140, 142 (Mo.App. W.D.2004).

State procedural laws may be followed by a state court applying substantive federal law so long as the procedure does not defeat any of the rights contained in the federal act under consideration. *Greenpoint Credit, L.L.C. v. Reynolds*, 151 S.W.3d 868, 873 n. 3 (Mo.App. S.D.2004); *see also Greenwood v. Sherfield*, 895 S.W.2d 169, 172 (Mo.App. S.D.1995). Thus, where a Missouri court is addressing an arbitration provision falling within the FAA, the Missouri court must apply the substantive law of the FAA contained in 9 U.S.C. § 2, but may apply state procedural rules so long as they do not defeat any of the substantive rights granted by Congress in the act. *Reynolds*, 151 S.W.3d at 873 n. 3. Section 435.440.1 clearly does not

language indicates that Congress intended to limit the application of the section to federal courts. In 1954, as a purely clerical change, Congress inserted "United States district court" in § 4 as a substitute for "court of the United States." Both House and Senate Reports explained: "United States district court' was substituted for 'court of the United States' because, among Federal courts, such a proceeding would be brought only in a district court."

Although 9 United States Code section 3 is less clear, it would appear that 'courts of the United States' under section 3 means federal district courts, because state courts are courts 'in' but not 'of' the United States as commonly designated in federal law. Because sections 3 and 4 constitute part of the same enforcement scheme under the FAA, the language in both sections should be interpreted consistently.... Moreover, before the minor amendment in section 4's phrasing, [a]s originally enacted, § 3 referred, in the same terms as § 4, to 'courts [or court] of the United States. The legislative history of the original enactment further suggests that sections 3 and 4 were intended to regulate federal procedures for the enforcement of arbitration agreements. Thus, the identical phrasing in the FAA's original procedural provisions together with its legislative history reflects a congressional intent that the two sections apply to federal courts.

Further, the United States Supreme Court does not read the FAA's procedural provisions to apply to state court proceedings. "[W]e do not hold that §§ 3 and 4 of the Arbitration Act apply to proceedings in state courts. Section 4, for example, provides that the Federal Rules of Civil Procedure apply in the proceedings to compel arbitration. The Federal Rules do not apply in such state court proceedings." [quoting *Southland Corp. v. Keating*, 465 U.S. 1, 16 n. 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)]. In [*Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 477 n. 6, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)], the high court later confirmed that, "While we have held the FAA's 'substantive' provisions—§§ 1 and 2—are applicable in state as well as federal court, we have never held that §§ 3 and 4, which by their terms appear to apply only to proceedings in federal court, are nonetheless applicable in state court." (internal quotations and citations omitted). The California Supreme Court went on to conclude that "[l]ike other federal procedural rules, ... the procedural provisions of the [FAA] are not binding on state courts ... provided applicable state procedures do not defeat the rights granted by Congress." *Id.* at 226 (internal quotations and emphasis omitted).

serve to defeat any of the rights granted by Congress under the FAA and, in fact, is wholly consistent with the provisions of the FAA allowing for an appeal from the denial of a motion to compel arbitration.

▮▮▮ While Alltel failed to assert § 435.440.1 as a basis for this Court's jurisdiction in the jurisdictional statement contained in its brief, even if the grounds asserted by Alltel were invalid, this Court is not required to dismiss an action for failure to properly assert the jurisdictional basis for an appeal in a jurisdictional statement where it is apparent from the briefs and the record that an appeal is proper under Missouri law. *See Estate of Athon v. Conseco Fin. Servicing Corp.,* 88 S.W.3d 26, 29 (Mo.App. W.D.2002). Accordingly, Section 435.440.1 is controlling, and this Court has jurisdiction to review the trial court's denial of Alltel's motion to compel arbitration under Missouri statute. *Dunn Indus. Group,* 112 S.W.3d at 427.[7]

We now turn to Alltel's points on appeal. All of Alltel's points challenge the trial court's denial of its motion to compel arbitration.

▮▮▮ In its first point, Alltel asserts that the trial court erred in refusing to compel arbitration because it failed to give sufficient deference to the strong policy in favor of arbitration set forth in 9 U.S.C. § 2 of the FAA. Alltel contends that the failure of the trial court to specifically refer to the federal policy favoring arbitration "in and of itself supports reversal."

▮▮▮ Alltel does not cite any legal authority in support of this proposition, and we are aware of none. The trial court's failure to include language in its decision

recognizing the general federal policy in favor of arbitration simply does not support, "in and of itself," reversal of the trial court's decision. "Standing alone, a public policy favoring arbitration is not enough to extend the application of an arbitration clause far beyond its intended scope." *Greenwood,* 895 S.W.2d at 174. Moreover, Alltel fails to identify anything in the record, aside from the result reached by the trial court, in support of its claim that the trial court disregarded this general policy in denying its motion to compel arbitration. In short, in this point, Alltel has failed to establish any substantive basis upon which we could find error with the trial court's decision. Point denied.

In its second point, Alltel contends that the trial court erroneously determined that Whitney's claim under the Merchandising Practices Act related to allegedly deceptive billing practices and his claim for unjust enrichment fell outside the scope of the arbitration provision. Alltel argues that the language contained in the provision clearly encompassed the claims asserted by Whitney in his petition in that they "arose out of" the terms and conditions of the contract or were "related to" the service provided.

While it seems clear that Whitney's claims do not "relate to" the service provided, it is less apparent whether the claims "arose out of" of the terms and conditions of the contract. There are strong arguments suggesting the claims are independent of the contract terms and do not require reference to the underlying contract so as not to have "arose out of" the contract, but there are also not inconsequential contentions that the claims

---

7. We need not determine whether the trial court's denial of Alltel's motion to stay the litigation could properly be appealed to this Court, something not provided for in § 435.440, because the trial court's denial of the motion to compel arbitration rendered the motion to stay litigation moot. *Dunn Indus. Group, Inc. v. City of Sugar Creek,* 112 S.W.3d 421, 433 (Mo. banc 2003).

"arose out of" of the contract provisions relating to billing. Ultimately, however, because we affirm the trial court's finding of unconscionability addressed in Alltel's Point III, IV and V, we need not decide whether Whitney's claims "arose out of" the contract, but rather will assume, *arguendo*, for purposes of this appeal, that they did.

■ Alltel's third, fourth, and fifth points all challenge the trial court's determination that the arbitration provisions contained in the contract were unconscionable. In its third point, Alltel claims the trial court erred in striking down the arbitration provision on the grounds that it was procedurally unconscionable. Alltel argues that contracts of adhesion are allowed under Missouri law and that restrictions on fine print are improper under the FAA. Alltel presumes that the trial court's ruling of unconscionability was based solely upon those facts and asserts that a contract cannot be stricken for unconscionability merely on procedural matters.

■ Under 9 U.S.C. § 2, written agreements to arbitrate are "valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*" (emphasis added). Accordingly, "generally applicable state law contract defenses, such as fraud, duress and unconscionability, may be used to invalidate arbitration agreements without contravening the FAA." *Swain v. Auto Servs., Inc.*, 128 S.W.3d 103, 107 (Mo.App. E.D.2003). In this instance, the trial court found that, even if the disagreement between the parties fell within the scope of the arbitration agreement, the arbitration provision was unconscionable and, therefore, should not be enforced.

■ "It is suggested that there are procedural and substantive aspects of unconscionability, the former relating to the formalities of the making of the contract and the latter to the specific contract terms." *Bracey v. Monsanto Co.*, 823 S.W.2d 946, 950 (Mo. banc 1992). "[P]rocedural unconscionability in general is involved with the contract formation process, and focuses on high pressure exerted on the parties, fine print of the contract, misrepresentation, or unequal bargaining position." *Funding Sys. Leasing Corp. v. King Louie Int'l, Inc.*, 597 S.W.2d 624, 634 (Mo.App. W.D.1979). "By substantive unconscionability is meant an undue harshness in the contract terms themselves." *Id.* "Generally there must be both procedural and also substantive unconscionability before a contract or a clause can be voided." *Id.* Furthermore, "it has been suggested ... that there be a balancing between the substantive and procedural aspects, and that if there exists gross procedural unconscionability then not much be needed by way of substantive unconscionability, and that the same 'sliding scale' be applied if there be great substantive unconscionability but little procedural unconscionability." *Id.*

In concluding that the arbitration provision was unconscionable, the trial court made the following findings:

The Court further finds that the arbitration provision Alltel is seeking to enforce is unconscionable and thus unenforceable. There are both procedural and substantive aspects to the unconscionability. The "Terms and Conditions" containing the arbitration defendant is seeking to enforce were sent to plaintiff in the mail on a take it or leave it fashion. Alltel was in a much superior bargaining position, and there was no negotiation between the parties. Further, the arbitration provision at issue was in fine print on the back side of the sheet sent to plaintiff and was insufficient to call its customers' attention to

their waiver of the substantial rights guaranteed under the statutes and constitution that the arbitration provisions contemplates [sic].

There is also substantive unconscionability present. First, defendant's arbitratation[arbitration] provision purports to prohibit consolidation or class treatment of any claims. Here, plaintiff filed a putative class action challenging a charge of 88 cents per month. By itself, such a claim would not be economically feasible to prosecute. However, when all of the customers are added together, large sums of money are at stake. Prohibiting class treatment of these claims would leave consumers with relatively small claims without a practical remedy, and without a procedure (class actions) expressly provided for under Chapter 407 and the Missouri Rules of Civil Procedure.

Further, defendant's arbitration provision states that "Each party will bear the cost of preparing and prosecuting its case." This effectively takes away rights and remedies consumers have under Missouri law. First, the prevailing party cannot be awarded costs as they would under Missouri law if this arbitration provision is enforced. Further, it takes away the remedy provided under Chapter 407, RSMo that the Court may award the prevailing party attorneys' fees. *See* Section 407.025, RSMo. Finally, the Limitation of Liability section of the Terms and Conditions referenced in the arbitration provision purports to prevent Alltel from being liable for any "incidental or consequential damages ... punitive or exemplary damages, or attorneys' fees." These are damages expressly available to plaintiffs under Missouri statutes and common law. These limitations further make it infeasible for consumers to bring relatively small individual claims.

Taken as a whole, the Court finds the arbitration provision is unconscionable. The Court is persuaded by the line of cases holding "that an arbitration clause that defeats the prospect of class-action treatment is a setting where the practical effect affords the defendant immunity is unconscionable." *See Leonard v. Terminix International Company, L.P.,* 854 So.2d 529, 536 (Ala.2003)(citing numerous cases).

The findings of fact and conclusions of law contained in the trial court's order clearly reflect that the trial court did not base its conclusion that the arbitration provision was unconscionable solely upon its findings related to the adhesive nature of the contract and/or the fact that the arbitration clause was in fine print. Rather, the trial court clearly made its finding of unconscionability based upon the totality of the circumstances, weighing evidence of both procedural and substantive unconscionability, and did not rely solely upon its findings related to procedural unconscionability in voiding the arbitration provision. Alltel's third point is denied.

In Point IV, Alltel asserts that the trial court erred in finding that the arbitration provision related to class actions was unconscionable. Alltel claims that the provision is not objectively unreasonable and should be enforced according to the terms of the contract. Finally, in its fifth point, Alltel contends that the trial court improperly found that the limitations on liability set forth in the contract were substantively unconscionable. Alltel argues that the trial court could not properly make that determination because such provisions were severable from the arbitration provision and should be reviewed by the arbitrator.

■ Because the trial court clearly made its determination that the arbitration provisions in the contract were unconscion-

able based upon all of the factors referenced in Alltel's third, fourth, and fifth point, we must consider whether the trial court's conclusion is proper in light of all of those factors considered together, rather than addressing each factor separately to determine whether it supported the conclusion in and of itself.

As noted *supra*, "[s]tates may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of *any* contract.'" *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281, 115 S.Ct. 834, 843, 130 L.Ed.2d 753 (1995) (quoting 9 U.S.C. § 2) (emphasis in original). Accordingly, an arbitration agreement may be invalidated on the basis of such contract defenses as fraud, duress, or unconscionability. *Swain*, 128 S.W.3d at 107. In this manner, 9 U.S.C. § 2 "gives States a method for protecting consumers against unfair pressure to agree to a contract with an unwanted arbitration provision." *Dobson*, 513 U.S. at 281, 115 S.Ct. at 843.

The trial court found that the "Terms and Conditions" containing the arbitration provision were sent to Whitney in the mail on a take it or leave it basis, that Alltel was in a much superior bargaining position, and that there was no negotiation between the parties. The court further noted that the provision was in fine print on the back side of a sheet sent to Whitney with his regular bill. Alltel does not challenge these factual findings, and the record clearly establishes that this was a contract of adhesion and that aspects of procedural unconscionability were present.

Having determined that procedural unconscionability was established, we must next ascertain whether the record sufficiently established that the arbitration provisions were substantively unconscionable. "Adhesion contacts usually involve the unequal bargaining power of a large corporation versus an individual and are often presented in pre-printed form contracts." *Swain*, 128 S.W.3d at 107. While involving aspects of procedural unconscionability, such contracts "are not 'inherently sinister and automatically unenforceable.'" *Id.* (quoting *Hartland Computer Leasing Corp. v. Insurance Man, Inc.*, 770 S.W.2d 525, 527 (Mo.App. E.D.1989)). "Because the bulk of contracts signed in this country are form contracts—'a natural concomitant of our mass production-mass consumer society'—any rule automatically invalidating adhesion contracts would be 'completely unworkable.'" *Id.* (quoting *Hartland Computer Leasing Corp.*, 770 S.W.2d at 527). "Rather, as with all contracts, the courts seek to enforce the reasonable expectations of the parties garnered not only from the words of a standardized form imposed by its proponent, but from the totality of the circumstances surrounding the transaction." *Hartland Computer Leasing Corp.*, 770 S.W.2d at 527. "'Because standardized contracts address the mass of users, the test for 'reasonable expectations' is objective, addressed to the average member of the public who accepts such a contract, not the subjective expectations of an individual adherent.'" *Swain*, 128 S.W.3d at 107 (quoting *Hartland Computer Leasing Corp.*, 770 S.W.2d at 527–28). "Only such provisions of the standardized form which fail to comport with such reasonable expectations and which are unexpected and unconscionably unfair are held to be unenforceable." *Hartland Computer Leasing Corp.*, 770 S.W.2d at 527; *see also Smith v. Kriska*, 113 S.W.3d 293, 298 (Mo.App. E.D.2003).

Standing alone, "[a]n agreement choosing arbitration over litigation, even between parties of unequal bargain-

ing power, is not unconscionably unfair," *Swain*, 128 S.W.3d at 108, and "[a] provision so requiring is not unenforceable on the basis that it is a contract of adhesion." *Greenpoint Credit, L.L.C. v. Reynolds*, 151 S.W.3d 868, 875 (Mo.App. S.D.2004). Provided that an average, reasonable person would reasonably expect that the dispute at issue, arising from the agreement, might be resolved through arbitration rather than litigation, the arbitration provision is not unreasonably unfair. *See Swain*, 128 S.W.3d at 107–08; *Greenpoint Credit, L.L.C.*, 151 S.W.3d at 875.

Whitney argues that the arbitration provisions in the contract effectively allow Alltel to circumvent the protections afforded to consumers by the Merchandising Practices Act and to deprive Alltel's customers of those protections. He contends that the arbitration provisions so limit the rights and remedies available to consumers under that act as to be unconscionable. Whitney further asserts that the combination of the provision requiring arbitration with the provision prohibiting the consolidation of claims or class actions, which are expressly allowed by the Merchandising Practices Act; the provision precluding incidental, consequential, punitive, or exemplary damages as well as attorneys' fees; and the provision requiring the consumer to bear the costs of the arbitration, effectively grants Alltel immunity from claims related to improper billing where hundreds of dollars are not involved.

Generally, "statutory claims can be appropriately resolved through arbitration," and the United States Supreme Court has "enforced agreements to arbitrate that involve such claims." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89, 121 S.Ct. 513, 521, 148 L.Ed.2d 373 (2000). "[E]ven claims arising under a statute designed to further important social policies may be arbitrat-

ed because so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute serves its functions." *Id.* at 90, 121 S.Ct. 513. (internal quotation omitted). However, in some instances, where the arbitration provision is so prohibitive as to effectively deprive a party of his or her statutory rights, the arbitration agreement may be invalidated. *See Leonard v. Terminix Int'l Co.*, 854 So.2d 529 (Ala.2002); *Powertel, Inc. v. Bexley*, 743 So.2d 570 (Fla.Dist.Ct.App. 1999); *See also Randolph*, 531 U.S. at 90–92, 121 S.Ct. at 522–23 (acknowledging that an arbitration provision could be invalidated based upon the fact that the issues were unsuitable for arbitration because the costs of arbitration would be prohibitively expensive, but finding that the plaintiff failed to make a showing of prohibitive expense).

Both *Leonard v. Terminix International Co.*, 854 So.2d 529 (Ala.2002), and *Powertel, Inc. v. Bexley*, 743 So.2d 570 (Fla. Dist.Ct.App.1999), are factually on point, and we find the reasoning of those cases persuasive on this issue. In *Leonard*, the Leonards had a termite protection plan with Terminix that provided that any controversy or claim between them arising out of or relating to the agreement would be settled by arbitration. 854 So.2d at 531. Subsequently, the Leonards filed a class action lawsuit against Terminix for failing to satisfy its statutory duty to make yearly termite inspections. *Id.* at 532. In affirming the trial court's denial of Terminix's motion to compel arbitration, the Court held:

The limitation upon recovery of 'indirect, special, and consequential damages or loss of anticipated profits' in the arbitration clause and elsewhere in the agreement and the preclusion of eligibility for class-action treatment by insert-

ing a provision requiring arbitration deprive the Leonards of a meaningful remedy and lead us to conclude that Terminix has extracted unreasonably favorable and patently unfair terms in its contract of adhesion. Consequently, the arbitration clause is unconscionable and unenforceable.

\* \* \*

This arbitration agreement is unconscionable because it is a contract of adhesion that restricts the Leonards to a forum where the expense of pursuing their claim far exceeds the amount in controversy. The arbitration agreement achieves this result by foreclosing the Leonards from an attempt to seek practical redress through a class action and restricting them to a disproportionately expensive individual arbitration.

*Id.* at 538–39. In reaching that conclusion, the *Leonard* court noted that "[s]everal courts confronting this issue have been favorably disposed to the view that an arbitration clause that defeats the prospects of class-action treatment in a setting where the practical effect affords the defendant immunity is unconscionable."[8] *Id.* at 536.

In *Powertel,* the plaintiff brought a class action under Florida's Unlawful and Deceptive Trade Practices Act alleging that Powertel, a cellular telephone service company, had wrongfully billed services. 743 So.2d at 572. After the plaintiffs had entered into the original service contract, Powertel had mailed out a pamphlet containing new contractual provisions, one of which included an arbitration clause. *Id.* The court found the arbitration provision was both procedurally and substantively unconscionable. *Id.* at 574. The *Powertel* court found that it was procedurally unconscionable because it was an adhesion contract unilaterally drafted by Powertel and mailed to customers with their telephone bill on a take it or leave it basis. *Id.* at 574–75. The court further noted that the finding of procedural unconscionability was bolstered by the fact that the pamphlet containing the clause appeared at first glance to be little more than a restatement of the original terms and conditions of service and did not call attention to the changes being made. *Id.* at 575. The court also found that the arbitration provision was substantively unconscionable because (1) a provision limited Powertel's liability to actual damages and precluded the possibility of punitive damages; (2) the arbitration provisions precluded class litigation, which was the only economically feasible remedy for the claims being asserted because the potential claims were too small to be litigated individually; and (3) the arbitration clause forced the plaintiffs to waive important statutory remedies like the possibility of declaratory or injunctive relief provided for in the Unlawful and Deceptive Trade Practices Act because such relief could not be granted by an arbitrator. *Id.* at 576–77. The court held that "[i]t is unreasonable to assume that the plaintiff and other cellular telephone customers would knowingly and voluntari-

---

**8.** Citing: *Knepp v. Credit Acceptance Corp. (In re Knepp),* 229 B.R. 821, 842 (Bankr.N.D.Ala. 1999); *Keating v. Superior Court of Alameda County,* 31 Cal.3d 584, 183 Cal.Rptr. 360, 645 P.2d 1192, 1207 (1982), rev'd in part and appeal dismissed in part on other grounds, *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Rollins, Inc. v. Foster,* 991 F.Supp. 1426, 1437 (M.D.Ala.

1998); *Patterson v. ITT Consumer Fin. Corp.,* 14 Cal.App.4th 1659, 18 Cal.Rptr.2d 563 (1993); *Williams v. Aetna Fin. Co.,* 83 Ohio St.3d 464, 700 N.E.2d 859, 866–67 (1998); *State of West Virginia ex rel. Dunlap v. Berger,* 211 W.Va. 549, 567 S.E.2d 265 (2002); and *Ting v. AT & T,* 182 F.Supp.2d 902, 938–39 (N.D.Cal.2002).

ly trade powerful remedies under a consumer protection statute for the limited right to recover actual damages under the arbitration agreement." *Id.* at 577. The court noted that the arbitration provision effectively insulated Powertel from liability under state consumer laws and gave an unfair advantage to Powertel. *Id.*

While Alltel cites cases from several jurisdictions holding that arbitration clauses are not unconscionable simply because they bar class actions, in those cases, the court either did not consider the separate issue of whether the plaintiff's statutory rights could be adequately vindicated in the arbitral forum [9] or found that the record established that the plaintiff's rights could be vindicated through arbitration under the contractual provisions and factual circumstances involved in that case.[10]

The only "authority" cited by Alltel that involves the same contractual provisions and facts relatively similar to the case at bar is an unpublished order compelling arbitration issued by a federal district court in Florida, *Hughes v. Alltel Corp.*, No. 03cv127 (N.D.Fla. Mar. 31, 2004). In that case, the Florida court spent all of three sentences rejecting the plaintiff's claim that the costs of arbitration were too prohibitive to vindicate his claim based on a finding that the evidence did not establish that the plaintiff would incur prohibitive costs. In so doing, the Florida court focused entirely on the filing fees and

hearing fees for arbitration and the fact that the contract provided for reimbursement of filing and hearing fees to the extent they exceeded what court costs would have been if the claim had been resolved in state court; the court did not consider the issue of attorney's fees and other costs. We simply do not find the abbreviated analysis contained in the Florida court's unpublished order to be persuasive in addressing the case at bar, whereas the thorough analysis in *Leonard* and *Powertel* is compelling.

As was the case in both *Leonard* and *Powertel*, as well as in many of the cases on which they relied, the arbitration provision in the case at bar prohibited class actions and required the customer to bear the costs of arbitration, thereby limiting Whitney and other customers to a forum where the expense of pursuing most claims related to incorrect billing would far exceed the amount in controversy. In addition, the contract contained a provision which prohibited an award of any incidental, consequential, punitive, or exemplary damages as well as attorneys' fees. Whitney's claims related to an eighty-eight cent per month charge that Alltel had been placing on his and other customer's bills since January 2002. Thus, at the time that the trial court ruled on Alltel's motion to compel arbitration, Whitney had allegedly been improperly billed a total of $24.64. Even if the arbitrator were deemed to

9. *See Burden v. Check Into Cash of Kentucky*, 267 F.3d 483, 492–93 (6th Cir.2001); *Johnson v. West Suburban Bank*, 225 F.3d 366, 373–74 (3rd Cir.2000); *Bischoff v. DirecTV, Inc.*, 180 F.Supp.2d 1097, 1108 (C.D.Cal.2002); *AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 201 (Tex.App.-Houston [14th Dist.] 2003); *Ranieri v. Bell Atl. Mobile*, 304 A.D.2d 353, 759 N.Y.S.2d 448, 449 (N.Y.App.Div.2003); *Edelist v. MBNA Am. Bank*, 790 A.2d 1249, 1260–61 (Del.Super.Ct.2001).

10. *See Iberia Credit Bureau, Inc. v. Cingular Wireless L.L.C.*, 379 F.3d 159, 174–75 (5th Cir.2004); *Livingston v. Associates Fin., Inc.*, 339 F.3d 553, 557 (7th Cir.2003); *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 638 (4th Cir.2002); *Randolph v. Green Tree Fin. Corp.*, 244 F.3d 814, 818 (11th Cir.2001); *Gras v. Associates First Capital Corp.*, 346 N.J.Super. 42, 786 A.2d 886, 892 (2001); *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 363 (Tenn.Ct.App.2001); *Rains v. Foundation Health Sys. Life & Health*, 23 P.3d 1249, 1253 (Col.Ct.App.2001).

have the authority to award Whitney interest on this amount if the claim were found to be valid, the award could not possibly approach the amount that would have to be expended in arbitrating the action. Accordingly, the costs would be so prohibitively expensive as to preclude, for all practical purposes, an aggrieved party from seeking redress for a violation of the Merchandising Practices Act. Any of Alltel's other customers wishing to challenge the eighty-eight cent charge would face the same economic hurdle. Yet because of the many customers affected, Alltel would be entitled to retain millions and millions of dollars from what were allegedly improper and deceptive charges. Moreover, since no single customer could undertake a case against Alltel, the company could continue its improper and deceptive charges *ad infinitum* since none of its customers would have a practical remedy to bring about a stop to the conduct.

An average person would not reasonably expect that a dispute like the one at issue would be required to be resolved through arbitration on an individual case by case basis. Such a requirement, if found to bar actions such as this, would effectively strip consumers of the protections afforded to them under the Merchandising Practices Act and unfairly allow companies like Alltel to insulate themselves from the consumer protection laws of this State. This result would be unconscionable and in direct conflict with the legislature's declared public policy as evidenced by the Merchandising Practices Act and similar statutes. Accordingly, we find that the arbitration provisions contained in the Terms and Conditions provided to Whitney by Alltel would be substantively unconscionable as applied to this type of dispute.[11]

In regard to Alltel's ancillary contention that the trial court should not have considered the applicability of the "Limitations of Liability" section found in the agreement when considering whether the arbitration provision was conscionable, we find that contention likewise has no merit. The "Limitations of Liability" section was expressly referenced within the arbitration provision, which specifically forbade the arbitrator from altering or modifying the terms of that "Limitations of Liability" section. Thus, the "Limitations of Liability" section was an integral part of the arbitration clause. This provision had to be considered by the trial court in assessing whether Whitney's statutory rights could be effectively vindicated in the arbitral forum. *See Leonard,* 854 So.2d 529; *Powertel,* 743 So.2d 570; *see also Randolph,* 531 U.S. at 90, 121 S.Ct. at 522.

Based upon the evidence in the record, we find that the arbitration agreement provision of the contract between Alltel and Whitney was both procedurally and substantively unconscionable and that the trial court did not err in finding that it was unenforceable on this basis. Alltel's third, fourth, and fifth points are denied.

For the foregoing reasons, the trial court's denial of Alltel's motion to compel arbitration is affirmed.

All concur.

---

**11.** While arguing that the arbitration provisions are not unconscionable, Alltel has failed to explain, at any point on appeal or before the trial court, how an individual consumer that has been negligently, fraudulently, or otherwise improperly billed for relatively small charges could obtain a practical and adequate remedy under the arbitration provisions.