# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3235

_____

Chrystin Pleasants, individually and on behalf of all others similarly situated,

        Appellant,

v.

American Express Company, a New York Corporation; American Express Incentive Services, a Missouri limited liability corporation,

        Appellees.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States District Court for the Eastern District of Missouri.

_____

Submitted: June 13, 2008
Filed: September 9, 2008 (Corrected: 9/10/08)

_____

Before LOKEN, Chief Judge, COLLOTON, Circuit Judge, and PIERSOL,[1] District Judge.

_____

COLLOTON, Circuit Judge.

Chrystin Pleasants filed suit on behalf of herself and a putative class, alleging that American Express Company and American Express Incentive Services (AEIS)

_____

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota, sitting by designation.

violated the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, by issuing pre-loaded, stored-value cards without making the disclosures required under the TILA. The district court[2] dismissed American Express Company, without objection from Pleasants, because it was not a "creditor" under TILA. AEIS moved to compel Pleasants to arbitrate her claims on an individual basis, as provided for in the contract between the parties. The district court granted the motion, and Pleasants appeals, arguing that the contract's class-action waiver is unconscionable. We affirm.

## I.

In 2005 and 2006, AEIS sent Pleasants three pre-paid or "pre-loaded" cards in exchange for Pleasants's participation in online surveys. The cards, which had values of $25, $10, and $5, could be used to make purchases at establishments that accepted American Express credit cards. Accompanying each card was a document entitled, "Card Terms and Conditions," which stated in relevant part:

### Participant Agreement

1. Please read the following information governing this Card and retain for your records. Please sign the Card immediately. By accepting and retaining the Card, singing the Card or using the Card, you agree to all the terms and conditions in this participant agreement . . . .

. . . .

### Arbitration

 . . . .

---

[2] The Honorable Carol E. Jackson, Chief Judge, United States District Court for the Eastern District of Missouri.

**Initiation of Arbitration Proceeding/Selection of Administrator.** Any Claim shall be resolved, upon the election by you or us, by arbitration pursuant to this Arbitration Provision and the code of procedures of the national arbitration organization to which the Claim is referred in effect at the time the Claim is filed . . . .

. . . .

**Significance of Arbitration: IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM, OR TO HAVE THEIR CLAIMS RESOLVED EXCEPT AS PROVIDED FOR IN THE CODE OF PROCEDURES OF THE NAF, JAMS OR AAA, AS APPLICABLE (THE "CODE"). FURTHER YOU AND WE WILL NOT HAVE THE RIGHT TO PARTICIPATE IN A REPRESENTATIVE CAPACITY OR AS A MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION**. . . .

**Restrictions on Arbitration.** If either party elects to resolve a Claim by arbitration, that Claim shall be arbitrated on an individual basis. There shall be no right or authority for any Claims to be arbitrated on a class action basis or on bases involving Claims brought in a purported representative capacity on behalf of the general public, other Cardholders or other persons similarly situated. The arbitrator's authority to resolve Claims is limited to Claims between you and us alone. Furthermore, Claims brought by you against us or by us against you may not be joined or consolidated in arbitration with Claims brought by or against someone other than you, unless otherwise agreed to in writing by all parties.

(J.A. 49) (emphasis in original).[3]

---

[3] Pleasants claims that "to the best of [her] recollection" she did not receive the Terms and Conditions page containing the arbitration provision. AEIS submitted a copy of the complete Terms and Conditions and asserted that it sent this agreement

According to Pleasants, on June 18, 2006, she used the cards to pay a bill of $20 at a restaurant. At the time, the three cards had a total value of $25.29, but the restaurant processed one or more of the cards for $45 more than their stored value. On June 22, 2006, AEIS requested that Pleasants pay the $45 difference within ten days. A month later, AEIS sent Pleasants another letter requesting that she pay the $45 difference, a $10 late fee, and a $25 transaction fee. This demand came pursuant to the terms and conditions of the agreement, which state that "[i]f, for any reason whatsoever, a transaction is processed despite insufficient available points on the Card . . . you agree to reimburse us, upon request," and "we reserve the right to charge a Shortage fee of $25 per transaction every time your use of the Card results in a Shortage."

Pleasants disputed the charge, and when AEIS continued its collection efforts, Pleasants brought this lawsuit on behalf of herself and others similarly situated, claiming that AEIC violated the TILA and Federal Reserve Board Regulation Z, 12 C.F.R. § 226 *et seq.* Pleasants alleged, in part, that AEIS "falsely and misleadingly represented that its preloaded, stored value Cards were not and could not be used as credit or charge cards, when in fact [AEIS] intended to extend credit to a cardholder if the cardholder exceeds the pre-loaded value." Pleasants sought injunctive relief, actual and statutory damages, attorney's fees, and other costs.

AEIS moved to compel arbitration on an individual basis as provided in the terms and conditions of the card agreement and the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.* Pleasants then filed a motion to stay the resolution of AEIS's

with every card. The district court found that AEIS had "created a presumption that [Pleasants] received the arbitration clause," and that Pleasants's "contention that she does not remember receiving the second page of the Terms and Conditions is not sufficient to overcome this presumption." *Pleasants v. Am. Express Co.*, No. 4:06-CV-1516, 2007 WL 2407010, at *3-4 (E.D. Mo. Aug. 17, 2007). Pleasants does not challenge this conclusion on appeal.

motion to compel to allow the parties to engage in discovery related to the validity of the arbitration clause. Among other things, Pleasants claimed that she intended to argue that the contract was unconscionable, and that she needed to conduct discovery as to "whether studies were performed as to the readability of the arbitration clause," "how many consumers [sic] disputes have been arbitrated under the agreement," and "how many contracts exist in which [AEIS] included the arbitration clause." The district court denied Pleasants's motion, concluding as follows:

> It may very well be that, after reviewing [AEIS's] motion, the court finds that it cannot come to a conclusion without additional information. In that event, the Court will not hesitate to order limited discovery. However, it may also be the case that [AEIS's] motion clearly shows that the dispute must be submitted to arbitration. In that instance, no additional information would be helpful and the cost of discovery would prove to be unnecessary.

(J.A. 111).

Pleasants then filed her response to AEIS's motion to compel, arguing that the class-action waiver in the arbitration agreement was substantively and procedurally unconscionable. She argued that it was substantively unconscionable because claims of this type "involve small recoveries for which consumers are unlikely to arbitrate absent the class device," and procedurally unconscionable because AEIS had superior bargaining power, presented the arbitration clause on a take-it-or-leave-it basis, and did not send the agreement to Pleasants until after she had completed the surveys.

The district court concluded that the class-action waiver was not unconscionable and compelled Pleasants to submit her claim to arbitration on an individual basis. The court recognized that the amount in controversy was small, but reasoned that Pleasants could vindicate her rights without the class action mechanism, because "[u]nder TILA's remedial provision, 15 U.S.C. § 1640(a)(3), [Pleasants], if successful, is entitled to the 'costs of the action, together with a reasonable attorney's

fee as determined by the court.'" *Pleasants v. Am. Express Co.*, No. 4:06-CV-1516, 2007 WL 2407010, at *5 (E.D. Mo. Aug. 17, 2007). The court also concluded that there was "little, if any, procedural unconscionability present in this matter." *Id.* at *4. The court noted that the class-action waiver was in all-caps font and found that the "conspicuous manner in which the arbitration clause was presented distinguishes this case from those which found the clauses invalid." *Id.*

II.

"We review *de novo* the district court's decision to compel arbitration." *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 870 (8th Cir. 2004). Under the FAA, written agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. State-law "contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements," *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996), "*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Id.* at 686-87 (emphasis in original).

Pleasants argues that under Missouri law, the class-action waiver contained in the arbitration clause is unconscionable and thus unenforceable. Missouri courts have described an unconscionable agreement as one in which "no man in his senses and not under delusion would make, on the one hand, and as no honest and fair man would accept on the other," or one where there is "an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it." *Smith v. Kriska*, 113 S.W.3d 293, 298 (Mo. Ct. App. 2003) (internal quotations omitted). Missouri law requires that for a contract to be voided on this basis, it must be both procedurally and substantively unconscionable, although not necessarily in equal amounts. *Kansas City Urology, P.A. v. United Healthcare Services*, Nos. WD 67814, WD 67815, 2008 WL 272613,

-6-

at *6 (Mo. Ct. App. 2008). "Procedural unconscionability in general is involved with the contract formation process, and focuses on high pressure exerted on the parties, fine print of the contract, misrepresentation, or unequal bargaining position." *Whitney v. Alltel Commc'n, Inc.*, 173 S.W.3d 300, 308 (Mo. Ct. App. 2005) (internal alternation and quotations omitted). Substantive unconscionability refers to "an undue harshness in the contract terms themselves." *Id.*

In *Whitney*, the Missouri Court of Appeals determined that an arbitration provision containing a class-action waiver was unconscionable. The plaintiff, Whitney, had been a wireless telephone customer of Alltel since 1995. *Id.* at 304. In 2000, Alltel sent Whitney his monthly bill with a list of terms and conditions on the back. *Id.* The terms altered the parties contract "and stated that a customer's use of Alltel services subsequent to receipt of the new Terms and Conditions would be deemed to constitute acceptance of those terms." *Id.* One of the new terms required the parties to arbitrate, on an individual basis, any dispute arising out of their agreement. *Id.* Each party was required to "bear the costs of preparing and prosecuting its case." *Id.* In 2002, Whitney filed a lawsuit "asserting that Alltel had violated Missouri's Merchandising Practices Act by improperly including a line item charge of $0.88 per month for a "Regulatory Cost Recovery Fee." *Id.* (internal citation omitted). Alltel moved to compel arbitration. *Id.*

The Missouri Court of Appeals concluded that the arbitration clause was substantively unconscionable, because it "contained a provision which prohibited an award of any incidental, consequential, punitive, or exemplary damages as well as attorneys' fees," and "prohibited class actions and required the customer to bear the costs of arbitration, thereby limiting Whitney and other customers to a forum where the expense of pursuing most claims related to incorrect billing would far exceed the amount in controversy." *Id.* at 313. The court noted that the costs of litigating the dispute under this agreement would "be so prohibitively expensive as to preclude, for all practical purposes, an aggrieved party from seeking redress for a violation of the Merchandising Practices Act." *Id.* at 314. The court also concluded "that aspects of

procedural unconscionability were present," in that "Alltel sent the arbitration clause to Whitney on a take-it-or-leave-it basis, Alltel was in a superior bargaining position, there was no negotiation between the parties, and the arbitration provision was "in fine print on the back side of a sheet sent to Whitney with his regular bill." *Id.* at 310.

Pleasants argues that the class-action waiver in this case is "functionally identical" to the waiver in *Whitney*, and therefore unconscionable and unenforceable under Missouri law. The decision of an intermediate state appellate court is not binding on a federal court that seeks to determine state law, *see Cotton v. Commodore Exp., Inc.*, 459 F.3d 862, 864 (8th Cir. 2006), and we do not know whether the Supreme Court of Missouri would adopt the reasoning of *Whitney* in its entirety. In any event, there is at least one important difference between this case and *Whitney*. The arbitration clause in this case does not limit Pleasants's remedies. Under the TILA, a prevailing plaintiff may recover attorney's fees, costs, statutory damages (up to $2,000), and actual damages. 15 U.S.C. § 1640(a)(1)-(4). The court in *Whitney* relied heavily on the concern that because the arbitration clause prohibited an award of attorney's fees or "any incidental, consequential, punitive, or exemplary damages," 173 S.W.3d at 313, and because most of the disputes arising out of the contract would involve small dollar values, any "award could not possibly approach the amount that would have to be expended in arbitrating the action." *Id.* at 314. In this case, Pleasants's total recovery of attorney's fees, costs, and statutory damages of $2000 would likely exceed the costs of pursuing her claim. Enforcing the agreement under the circumstances of this case, therefore, does not lead to an unconscionable result. Indeed, *Whitney* itself distinguished the circumstances of that case from decisions in which courts have upheld class-action waivers in cases arising under the TILA. *Whitney*, 173 S.W.3d at 313 nn. 9-10 (distinguishing *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 638 (4th Cir. 2002), *Randolph v. Green Tree Fin. Corp*, 244 F.3d 814, 818 (11th Cir. 2001), and *Johnson v. West Suburban Bank*, 225 F.3d 366, 373-74 (3d Cir. 2000)).

Therefore, we agree with the district court that the class-action waiver is not substantively unconscionable under these circumstances. We further agree with the district court that there are not strong indicia of procedural unconscionability, given the conspicuous manner in which the class-action waiver appeared. The agreement is thus enforceable, and the district court correctly granted the motion to compel Pleasants to arbitrate her claim on an individual basis.

Because we conclude that the waiver is not unconscionable, Pleasants's argument that the district court erred in denying her discovery order is without merit. We review the district court's order for an abuse of discretion, allowing the court "great latitude" in discovery matters. *Executive Air Taxi Corp. v. City of Bismarck*, 518 F.3d 562, 570 (8th Cir. 2008) (internal quotation omitted). Pleasants argues that she should be allowed to conduct discovery on how many consumer disputes have been arbitrated under the agreement, and how many contracts exist in which AEIS included the arbitration clause. But Missouri law requires Pleasants to show that the costs of proceeding were prohibitively expensive in her case, and whether other consumers have elected to arbitrate claims under other contracts is not material to the determination of Pleasants's claim. Pleasants also argues that she should have been allowed to conduct discovery on any "readability studies" that AEIS may have conducted with respect to its arbitration agreement, on the theory that some companies draft an arbitration clause so that consumers will not understand it. This agreement states clearly, however, that "[i]f either party elects to resolve a Claim by arbitration, that Claim shall be arbitrated on an individual basis," and we do not see how AEIS's motives or the results of a study could alter that evident clarity. This proposed discovery, moreover, relates only to procedural unconscionability, and in view of our conclusion that the agreement is not substantively unconscionable, and error in limiting discovery on procedural matters was harmless.

\*      \*      \*

The judgment of the district court is affirmed.

_____