Beverly BREWER, Respondent,

v.

**MISSOURI TITLE LOANS, INC., Appellant.**

No. SC 90647.

Supreme Court of Missouri, En Banc.

Aug. 31, 2010.

Rehearing Denied Nov. 16, 2010.

Jonathan F. Andres and Martin M. Green, Green Jacobson PC in Clayton, for Appellant.

John Campbell, Erich Vieth, John Simon, The Simon Law Firm PC in St. Louis, for Respondent.

RICHARD B. TEITELMAN, Judge.

Missouri Title Loans, Inc., appeals a judgment finding that a class arbitration waiver contained in its loan agreement is unconscionable and unenforceable. The judgment is affirmed in part and reversed in part. The case is remanded.

### FACTS

Beverly Brewer borrowed $2,215 from Missouri Title Loans. She signed a loan agreement, promissory note and security agreement. The loan was secured by the title to Brewer's 2003 Buick Rendezvous. The annual percentage rate on the loan was 300 percent. The loan agreement included language requiring individual arbitration and a waiver of Brewer's right to class arbitration.

Brewer filed a class action petition against Missouri Title Loans alleging violations of numerous statutes, including the Missouri merchandising practices act. Missouri Title Loans filed a motion to dismiss or to stay the claims and to compel Brewer to arbitrate her claims individually. The trial court entered a judgment finding the class arbitration waiver in the loan agreement unconscionable and unenforceable. The court ordered the claim to proceed to arbitration to determine whether it was suitable for class arbitration. Missouri Title Loans appeals.

### ANALYSIS

Missouri Title Loans raises three points on appeal. It asserts that the federal arbitration act ("FAA") preempts the trial court's decision, that the class arbitration waiver was not unconscionable, and that the waiver is a valid and permissible exculpatory clause under Missouri law.

### I. Standard of Review

 The trial court heard evidence on the record at a hearing on Missouri Title Loans' motion. The judgment will be affirmed if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Woods v. QC Financial Services, Inc.*, 280 S.W.3d 90, 94 (Mo.App. 2008). The issue of whether a dispute is subject to arbitration is subject to de novo review. *Id.*

### II. Federal Arbitration Act

 The FAA, 9 U.S.C. section 1, *et seq.*, provides that valid arbitration agreements that affect interstate commerce must be enforced unless an exception applies. *Kansas City Urology, P.A. v. United Healthcare Servs.*, 261 S.W.3d 7, 10–11 (Mo.App.2008). Although the FAA is drafted to favor the enforcement of arbitration provisions, generally applicable state law contract defenses such as fraud, duress and unconscionability may be used to invalidate all or part of an arbitration agreement without contravening the FAA. *Swain v. Auto Services, Inc.*, 128 S.W.3d 103, 107 (Mo.App.2003) (citing *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)).

 The interplay between Brewer's state law unconscionability defense and the FAA is informed by the recent decision in *Stolt–Nielsen v. AnimalFeeds International Corp.*, — U.S. —, 130 S.Ct. 1758, 1776, 176 L.Ed.2d 605 (2010). In *Stolt–Nielsen*, the Supreme Court held that where an arbitration agreement is silent with respect to class arbitration, the parties cannot be compelled to submit the dispute to class arbitration. The Court premised its holding on the notion that arbitration is fundamentally a matter of consent, and, as a result, an arbitrator's authority over claims and parties is limited by the scope of the arbitration agreement *Id.* at 1774–75. Therefore, "it follows that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding the party agreed to do so." *Id.* at 1775. Because the parties in *Stolt–Nielsen* had reached no agreement on the issue of class arbitration, there was no contractual basis

for concluding there was consent to class arbitration. *Id.* Without consent, the arbitrator lacked the authority to act. *Id.*

In this case, the arbitration contract was not silent with respect to class arbitration. To the contrary, a central aspect of the arbitration contract between Missouri Title Loans and Brewer was the class arbitration waiver that Brewer is seeking to invalidate. With the waiver, Missouri Title Loans expressly withheld its consent to class arbitration. Although *Stolt–Nielsen* is factually distinguishable from this case because it involved sophisticated international business entities, the fact remains that the Supreme Court's analysis is premised on the concept of consent. Missouri Title Loans expressly withheld its consent to class arbitration. Were this Court to strike the class action waiver clause, the result would be an agreement that was silent as to class arbitration. As *Stolt–Nielsen* requires an affirmative consent to class arbitration before it may be compelled, its rationale would preclude Missouri Title Loans from being forced to submit to class arbitration.

The conclusion that Missouri Title Loans cannot be compelled to participate in class arbitration does not mean that Brewer must submit to individual arbitration. The trial court found that the class arbitration waiver was unconscionable and unenforceable and ordered the case to proceed to arbitration for a determination of whether class arbitration is appropriate. In effect, the trial court, consistent with prior Missouri cases, severed what it found to be an unconscionable clause (the class arbitration waiver) from the otherwise enforceable arbitration contract. Under *Stolt–Nielsen,* however, class arbitration is not an option in this case because Missouri Title Loans expressly withheld its consent to class arbitration, and absent an express agree-ment to class arbitration, class arbitration is not an option.

For this reason, simply invalidating the class waiver would not remedy the unconscionable aspects of the arbitration contract should this Court agree that denial of the right to proceed on a class basis is unconscionable on these facts. That is because were the class waiver simply invalidated and severed from the remainder of the arbitration contract, Brewer then would be required to submit to individual arbitration. If this Court were to agree with the trial court that, on the facts of this case, individual arbitration is not economically practical or feasible because the amount in controversy is so small in relationship to the risks and costs involved that a reasonable attorney would not take the case, however, then individual arbitration would not be a feasible remedy. This difficulty could be avoided only by permitting litigation of this matter as part of a class action, and as there is no affirmative agreement to class arbitration, the class action must proceed in court. This is not surprising, for one of the rationales behind allowing class actions is to permit suit to be brought on a class basis where it is not economically or practically feasible to do so on an individual basis. *Woods,* 280 S.W.3d at 98.

■ This is not to say that an arbitration agreement is always unconscionable merely because there is no agreement to class arbitration; *Stolt–Nielsen* demonstrates that requiring individual arbitration can be reasonable and enforceable. It is only when the practical effect of forcing a case to individual arbitration is to deny the injured party a remedy—because a reasonable attorney would not take the suit if it could not be brought on a class basis either in court or through class arbitration that—a requirement for individual arbitration is unconscionable. The Court,

therefore, turns to the facts of this case to see whether the individual arbitration agreement imposed by Missouri Title Loans was unconscionable here.

## III. Unconscionability

 An unconscionable arbitration provision in a contract will not be enforced. *See State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 856–61 (Mo. banc 2006) (invalidating as unconscionable arbitration clauses requiring the consumer to pay for all arbitration fees and allowing an entity related to one of the parties to select the arbitrator); *Whitney v. Alltel Communications, Inc.*, 173 S.W.3d 300, 308–314 (Mo. App.2005) (invalidating as unconscionable an arbitration provision barring consumer claims from being raised as class actions). There are procedural and substantive aspects to unconscionability. Procedural unconscionability relates to the formalities of the making of an agreement and encompasses, for instance, fine print clauses, high pressure sales tactics or unequal bargaining positions. *Woods*, 280 S.W.3d at 94 (citing *Whitney*, 173 S.W.3d at 308). Substantive unconscionability refers to undue harshness in the contract terms. *Whitney*, 173 S.W.3d at 308 (quoting *Funding Sys. Leasing Corp. v. King Louie Int'l, Inc.*, 597 S.W.2d 624, 634 (Mo.App. 1979)).

 A number of decisions from the Missouri court of appeals has held that there must be both procedural and substantive unconscionability before a contract or a clause can be voided. *See Woods*, 280 S.W.3d at 94. These cases characterize the test for unconscionability as a balancing test or "sliding scale" between the substantive and procedural aspects. *Whitney*, 173 S.W.3d at 308. This general rule provides an acceptable analytical framework for most cases because a party who employs procedurally unconscionable bargaining tactics usually does so with the goal of inducing the other party into a one-sided contract. Nonetheless, there are cases in which a contract provision is sufficiently unfair to warrant a finding of unconscionability on substantive grounds alone. For instance, in *Schneider*, this Court did not address procedural unconscionability and, instead, determined that as the arbitration clause at issue was substantively unconscionable, it was void. 199 S.W.3d at 858–59. Although *Schneider* did not hold expressly that it is unnecessary to find both procedural and substantive unconscionability, the analysis in the case supports the conclusion that Missouri law does not require the party claiming unconscionability to prove both procedural and substantive unconscionability. Under Missouri law, unconscionability can be procedural, substantive or a combination of both.[1]

---

1. Cases from other jurisdictions are split on the issue of whether a party must prove both procedural and substantive unconscionability to void a contract or clause. In *Maxwell v. Fidelity Financial Services, Inc.*, 184 Ariz. 82, 907 P.2d 51, 59 n. 3 (1995), the court noted decisions in Utah, New York and New Hampshire expressly holding that a contract can be voided on grounds of unconscionability without finding both procedural and substantive unconscionability. *See Resource Management Co. v. Weston Ranch & Livestock Co.*, 706 P.2d 1028, 1043 (Utah 1985) ("gross disparity in terms, absent evidence of procedural uncon-

scionability, can support a finding of unconscionability"); *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 537 N.Y.S.2d 787, 534 N.E.2d 824, 829 (1988) ("while determinations of unconscionability are ordinarily based on the court's conclusion that both the procedural and substantive components are present . . . there have been exceptional cases where a provision of a contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone"); *American Home Improvement v. MacIver*, 105 N.H. 435, 201 A.2d 886, 889

■ The evidence in this case supports the trial court's determination that the class arbitration waiver is unconscionable. With respect to procedural unconscionability, there was evidence that the loan agreement was non-negotiable and difficult for the average consumer to understand and that Missouri Title Loans was in a superior bargaining position. As Brewer notes, this evidence is virtually identical to *Woods*, 280 S.W.3d at 96, in which the court of appeals affirmed a judgment finding that a class arbitration waiver provision contained in payday lender's loan contract was unconscionable. As in the present case, the evidence in *Woods* demonstrated that the lender was in a superior bargaining position because the high-interest loan agreement was offered to people in financial distress on a take-it or leave-it basis. As in *Woods*, there is sufficient evidence in this case to support the trial court's finding of procedural unconscionability.

■ Brewer also introduced substantial evidence of substantive unconscionability. Brewer presented expert testimony from three consumer lawyers who testified it was unlikely that a consumer could retain counsel to pursue individual claims. John Ammann, a professor from St. Louis University School of Law, testified that it would be very hard, "if not impossible," for a consumer to find counsel to handle a claim under the loan agreement because it is a complicated area of law. Such a claim would require significant expertise and discovery; therefore, it would not be financially viable for an attorney because of the complicated nature of the case and the small damages at issue. Bernard Brown,

another expert testifying on behalf of Brewer, testified it would be "exceedingly difficult," if not "outright rare," to find representation for individual claims. The final expert, Dale Irwin, testified that the likelihood of an individual finding an attorney to represent him or her was "virtually nil" because of the small damages and the likelihood of a "heavily defended" defendant such as Missouri Title Loans.

Brewer's evidence is similar to the class action waiver held unconscionable in *Woods*. The *Woods* court found that class action waiver and arbitration provision substantively unconscionable based on the limitation it placed on Woods's ability to retain counsel to pursue a cause of action. The inability to retain counsel leaves the consumer with no meaningful avenue of redressing complicated statutory and common law claims.[2] *Id.* at 97, 98. The net result of class arbitration waivers in consumer contracts involving small amounts of money is that " '[a] company [that] wrongfully exacts a dollar from each of millions of customers will reap a handsome profit [and] the class action is often the only effective way to halt and redress such exploitation.' " *Id.* at 97 (quoting *Discover Bank v. Superior Court,* 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100, 1105 (2005)). Therefore, the *Woods* court determined there was sufficient evidence to support a finding of unconscionability. *Id.* at 99. As was the case in *Woods*, the net result of the class arbitration waiver in this case is that Brewer effectively forfeited legal counsel in any claim that arose under the loan agreement. To hold otherwise would allow lenders to continue unfair lending practices "since none of its customers would have a practical remedy to bring

(1964) (holding a contract unconscionable due to substantial price to value disparity).

**2.** Section 407.025 of the Missouri merchandising practices act authorizes the recovery of

attorney fees. As such, the legislature anticipated that consumers need an attorney for successful vindication of the rights extended by the MPA.

about a stop to the conduct." *Whitney*, 173 S.W.3d at 310. Furthermore, because Brewer proved that the class arbitration waiver was unconscionable, the unavailability of class arbitration under the FAA means that the entire arbitration agreement is rendered unconscionable. Given that class arbitration is not an option in this case, the only way to remedy the unconscionability in this case is to strike the entire arbitration agreement.

## IV. *Exculpatory Clause*

In its final point on appeal, Missouri Title Loans argues that the class arbitration waiver is permissible because it functions as an unambiguous exculpatory clause. A defendant cannot exculpate itself from liability unless the language is clear and unambiguous. *Alack v. Vic Tanny Intern. of Missouri, Inc.*, 923 S.W.2d 330, 334 (Mo. banc 1996). Missouri Title Loans asserts that the class arbitration waiver is clear and unambiguous and that the average consumer would understand that he or she is giving up the right to class arbitration. This argument is without merit because the real issue is not whether the consumer realizes he or she is forsaking class arbitration but, instead, is whether the consumer realizes that he or she effectively is bypassing the opportunity to retain counsel to litigate a claim against the lender. The net result is that the class arbitration waiver effectively immunizes the loan company from liability, creating an economic impediment to the consumer's retention of counsel for litigating his or her claim. *See Woods*, 280 S.W.3d at 99. Nothing in the language of the class arbitration waiver unambiguously informs the consumer that the net result of the waiver is that the lender effectively is immunized from liability. As was the case in *Woods*, the class arbitration waiver here will not be enforced as a valid exculpatory clause.

## CONCLUSION

The judgment finding the class arbitration waiver unconscionable is affirmed. The judgment is reversed, however, to the extent that it severs the class arbitration waiver and requires an arbitrator to determine the propriety of class arbitration. Given the FAA's prohibition of class arbitration under the facts of this case and the fact that the unconscionable aspects of the arbitration contract are a result of the class arbitration waiver, the appropriate remedy is to strike the arbitration agreement in its entirety. The case is remanded.

RUSSELL, WOLFF and STITH, JJ., concur; PRICE, C.J., dissents in separate opinion filed; FISCHER, J., concurs in opinion of PRICE, C.J.; BRECKENRIDGE, J., dissents in separate opinion filed.

WILLIAM RAY PRICE, JR., Chief Justice, dissenting.

### I.

This case involves a collision between two valid public policy goals—consumer protection and freedom of contract. It is appropriate to regulate business interests from exploiting unwary, unsophisticated consumers. Yet Missouri law also recognizes the great value of freedom of contract, where parties may bargain both price and terms to their mutual benefit and then are held accountable for the agreement made.

The majority opinion holds that the class arbitration waiver in the title loan contract is unconscionable and then strikes the arbitration agreement in its entirety because it "effectively immunized" the lender from liability. I dissent because Ms. Brewer did not establish that the contract, and the

arbitration agreement contained therein, was procedurally unconscionable or that the class action waiver was substantively unconscionable.

## II.

The Federal Arbitration Act instructs states to enforce arbitration clauses unless they can be invalidated by ordinary contract principles: "An agreement to arbitrate is valid, irrevocable, and enforceable, as a matter of federal law, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. sec. 2. However, Missouri courts will not enforce unconscionable contracts. *Woods v. QC Financial Services, Inc.*, 280 S.W.3d 90, 99 (Mo.App.2008); *Kansas City Urology P.A. v. United Healthcare Services*, 261 S.W.3d 7, 14 (Mo.App.2008); *Whitney v. Alltel Communications, Inc.*, 173 S.W.3d 300, 308 (Mo.App.2005); *Swain v. Auto Services, Inc.*, 128 S.W.3d 103, 107 (Mo.App.2003). An unconscionable contract is an agreement "no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Smith v. Kriska*, 113 S.W.3d 293, 298 (Mo.App.2003).[1]

Section 400.2–302(1), RSMo, provides that

> If the court as a matter of law finds that the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

This statute has been used to guide Missouri courts in making determinations of unconscionability regarding arbitration agreements. *Vincent v. Schneider*, 194 S.W.3d 853 (Mo. banc 2006). As in any ordinary contract analysis, the parties' intentions control. *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, —— U.S. ——, 130 S.Ct. 1758, 1763, 176 L.Ed.2d 605 (2010) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)); *Dunn Industrial Group Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003) ("The usual rules and canons of contract interpretation govern the . . . validity of an arbitration clause").

## III.

Under Missouri law, a contract will not be voided for unconscionability unless it is both procedurally and substantively unconscionable. *Lawrence v. Beverly Manor*, 273 S.W.3d 525, 531 (Mo. banc 2009) (Norton, J., concurring); *Repair Masters Const., Inc. v. Gary*, 277 S.W.3d 854, 858 (Mo.App.2009); *Shaffer v. Royal Gate Dodge, Inc.*, 300 S.W.3d 556, 559 (Mo.App. 2009); *Kansas City Urology*, 261 S.W.3d at 15–16; *Woods*, 280 S.W.3d at 95; *Whitney*, 173 S.W.3d at 308; *Funding Systems Leasing Corp. v. King Louie International*, 597 S.W.2d 624, 634 (Mo.App.1979); *Cicle v. Chase Bank USA*, 583 F.3d 549, 554 (8th Cir.2009); *Pleasants v. American Express Company*, 541 F.3d 853, 857 (8th Cir.2008). Procedural unconscionability deals with the formalities of making the contract (such as high pressure sales tactics, unreadable fine print, or misrepresentation). This analysis focuses on whether the parties had a voluntary and sufficient meeting of the minds to bind each other to the terms of the writing. Substantive unconscionability deals with the terms of the contract itself (such as whether the terms are unduly harsh). This analysis focuses on whether the terms are so one sided that

---

1. It is not clear what definition of "unconscionability" the majority is using.

they are unenforceable as a matter of public policy. *State ex rel. Vincent v. Schneider,* 194 S.W.3d 853, 858 (Mo. banc 2006) (citing *Bracey v. Monsanto Co. Inc.,* 823 S.W.2d 946, 950 (Mo. banc 1992)).[2] Courts are rightly hesitant to substitute their judgment for that of freely acting parties. That is why a showing of procedural unconscionability is necessary—it flags circumstances in which one of the parties may not have freely consented to the bargain.

The majority argues that *Vincent* discarded the long-standing Missouri requirement of procedural unconscionability for invalidating a contract or the entirety of an arbitration agreement. *Vincent* did not go so far.

In *Vincent,* this Court found that plaintiffs had not proven that the contract was unenforceable as an adhesion contract. *Id.* at 857–58. The Court also refused to impose a mutuality requirement or strike the arbitration agreement as a whole. *Id.* at 859. Taking guidance from section 400.2–302, the Court then proceeded to determine that two sub-parts of the arbitration agreement, a cost-shifting provision and a provision governing selection of the arbiter, were unconscionable. *Id.* at 863. The rest of the arbitration agreement, however, was enforced. *Id.* at 861.

While *Vincent* did strike two sub-parts of the arbitration agreement, it did not disturb the Missouri requirement that a contract or an arbitration agreement be both procedurally and substantively unconscionable before a court will void either in its entirety. *Cicle,* 583 F.3d at 554 (citing *Whitney,* 173 S.W.3d at 308) ("Before a contract will be deemed unenforceable on the grounds of unconscionability, a court applying Missouri law must find it

both procedurally and substantively unconscionable."). In *Vincent,* the Court enforced the basic agreement of the parties to arbitrate, merely blue-penciling the substantively unconscionable provisions. *See, e.g., Mid–States Paint & Chemical Co. v. Herr,* 746 S.W.2d 613, 616 (Mo.App.1988) (citing *R.E. Harrington Inc. v. Frick,* 428 S.W.2d 945 (Mo.App.1968) ) ("Under the blue pencil doctrine, if a restrictive covenant contains words which are unreasonable limitations and if stricken would leave a reasonable contract, the court may 'blue pencil' or strike those words out."); *Sigma Chemical Co. v. Harris,* 794 F.2d 371 (8th Cir.1986).

To determine whether an agreement is procedurally unconscionable, an examination of the process is necessary. *Whitney,* 173 S.W.3d at 308. In this case, there is absolutely no evidence that Missouri Title Loans engaged in coercive or high-pressure sales tactics. There is evidence, however, that the class arbitration waiver was in all caps and in bold font. The fact that Ms. Brewer thought it was "not important" for her to read the loan agreement before signing it does not mean that the process was procedurally unfair. *See, e.g., Vincent,* 194 S.W.3d at 857 ("Relators cannot simply allege [unconscionability] and offer no other proof on the matter.").

Undoubtedly, Missouri Title Loans was in a better bargaining position than Ms. Brewer. Undoubtedly, the loan agreement between Missouri Title Loans and Ms. Brewer was a non-negotiated form contract. However, not all non-negotiated form contracts are unconscionable contracts of adhesion. *Cicle,* 583 F.3d at 554 ("These sorts of take-it-or-leave-it agreements between businesses and consumers

---

**2.** A 300 percent interest rate in any loan agreement is certainly suspect. However, that is not the issue before us.

are used all the time in today's business world. If they were all deemed to be unconscionable and unenforceable ... or if individual negotiation were required to make them enforceable, much of commerce would screech to a halt"). When a party offers no proof that she was unable to look elsewhere for a more attractive contract, or that all the area's title loan companies use the same class arbitration waivers, this Court ought not invalidate the parties' freely entered-into agreement. *Id.; Vincent*, 194 S.W.3d at 857 (the weaker party must show she was unable to look elsewhere for a better option); *Robin v. Blue Cross Hospital Service, Inc.*, 637 S.W.2d 695, 697 (Mo. banc 1982). Here, Brewer stated that there was nothing stopping her from looking elsewhere for a loan agreement with different or more favorable terms. In fact, before dealing with Missouri Title Loans, she compiled a list of 20 competing companies that offered the same services. Ms. Brewer nowhere claimed that all of these companies used the same standard form contract or that they included the same class arbitration waiver in their agreements. Ms. Brewer failed to prove that the contract she decided to enter into with Missouri Title Loans was procedurally unconscionable.

To the extent that the majority opinion invalidates the entire arbitration agreement in this case, without requiring a showing of procedural unconscionability, it departs from Missouri law.

## IV.

Admittedly, the majority does not invalidate the arbitration clause in one step. Instead, it argues a two-step analysis. First, the majority determines that the class action prohibition in the arbitration clause is substantively unconscionable because it deprives plaintiffs of a practical remedy. And second, because the newly decided Supreme Court case of *Stolt–Nielsen* refuses to allow class arbitration unless it is expressly provided for in an arbitration agreement, the majority concludes that the entire arbitration agreement must go. I disagree with both steps of the argument.

## A.

The initial amount in controversy in this case approximated $4,000. This amount continues to increase as interest accrues. In addition, there are possible penalties and fees that might be collected on Ms. Brewer's behalf. Despite the testimony of Ms. Brewer's expert witnesses, this is not an amount that can be considered *de minimis* as a matter of law. The removal of Ms. Brewer's right to arbitrate on a class basis may diminish her bargaining power and may diminish the amount of attorney's fees available, but it does not substantively or practically bar her from an adequate remedy for any harm she has suffered. *Charles v. Spradling,.* 524 S.W.2d 820, 824 (Mo.1975), is directly on point in this regard and directly contrary to the argument set out in the majority opinion.

## B.

The majority opinion also draws an unwarranted conclusion from *Stolt–Nielsen. Stolt–Nielsen* simply holds that when an arbitration agreement is silent with respect to class arbitration, the parties cannot be compelled to class arbitration. Rather, arbitration must proceed on an individual basis. 130 S.Ct. at 1776. *Stolt–Nielsen* does *not* hold that state courts may no longer sever class waivers without voiding the entire arbitration agreement. In fact, the Supreme Court does not disfavor agreements that compel individual arbitration in any way. To the contrary, individual arbitration is the default. According to *Stolt–Nielsen*, if the parties do

not in some way demonstrate an affirmative intent to engage in *class* arbitration, they will proceed to *individual* arbitration. Clearly, then, the Supreme Court is not instructing state courts to invalidate in its entirety any arbitration agreement that provides for individual arbitration, especially where arbitration—in some form— was contemplated by the parties. The driving rationale of *Stolt–Nielsen* is to give effect to the parties' intent. At a circuit court hearing in this case, Ms. Brewer's counsel stated: "I'll be very clear. We are not fighting arbitration." Because the majority invalidates the entire arbitration agreement, its result (class action litigation) is actually contrary to the result reached in *Stolt–Nielsen* (individual arbitration).

## V.

Finally, class waivers in arbitration agreements are enforceable. *Woods*, 280 S.W.3d at 98; *Ross–Langford v. Mercantile Town Mut. Ins. Co.*, 97 Mo.App. 79, 71 S.W. 720, 723 (1902). The Eighth Circuit has twice upheld this proposition, *see Cicle v. Chase Bank, USA*, 583 F.3d 549 (8th Cir.2009), and *Pleasants v. American Exp. Co.*, 541 F.3d 853 (8th Cir.2008), as has the Third Circuit in *Gay v. CreditInform*, 511 F.3d 369 (3rd Cir.2007). And in general, Missouri has a preference for arbitration. *Dunn Industrial Group Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003). I recognize that there are valid reasons to balance the bargaining power between strong business interests and relatively weak individual consumers, especially in the small loan industry where difficult circumstances often drive what appear to be one-sided deals. However, consumer protection measures always come at a price. Additional business or litigation costs for the small loan industry may result in even higher rates being charged to credit-challenged borrowers or their abandonment of this high risk market altogether. This type of public policy balancing is best left to the legislature and not to the courts. *See, e.g.,* § 407.025 of the Missouri Merchandising Practices Act. I would enforce the arbitration agreement.

PATRICIA BRECKENRIDGE, Judge, dissenting.

I join Chief Justice Price in dissenting from the majority opinion because the facts in this case do not support a finding of unconscionability. However, I write separately because I do not agree with his finding that both procedural and substantive unconscionability are always required to find a contract unenforceable. I believe that issue has not been sufficiently resolved in Missouri. Moreover, because the issue is not necessary to the resolution of the present case, it should be left for another day.

Courts in other jurisdictions have held that a contract must be both procedurally and substantively unconscionable for a contract to be invalidated. 8 RICHARD A. LORD, WILLISTON ON CONTRACTS § 18:10 (4th ed.1998); 7 JOSEPH M. PERILLO, CORBIN ON CONTACTS § 29.4 (Revised ed.2002). Accordingly, a number of courts have refused to apply the doctrine of unconscionability when there is merely procedural unconscionability but no showing of substantive unconscionability. 1 E. ALLEN FARNSWORTH, FARNSWORTH ON CONTRACTS § 4.28 (3rd ed.2004). Likewise, courts have held that substantive unconscionability, standing alone, is insufficient to invalidate a contract. *Id.* This appears to be the conclusion reached by the court of appeals. *See Repair Masters Const., Inc. v. Gary*, 277 S.W.3d 854, 858 (Mo.App.2009); *Kansas City Urology P.A. v. United Healthcare Services*, 261 S.W.3d 7, 15–16 (Mo. App.2008).

Other courts, however, have found a contract unenforceable on the basis of only substantive unconscionability in exceptional circumstances where the substantive unfairness in the contract is egregious. 1 FARNSWORTH ON CONTRACTS § 4.28; 8 WILLISTON ON CONTRACTS § 18:10; 7 Corbin on Contacts § 29.4. The majority opinion contends that one of this Court's prior decisions, *State ex rel. Vincent v. Schneider*, supports that conclusion. 194 S.W.3d 853 (Mo. banc 2006).

In *Schneider*, this Court considered whether an arbitration agreement in a real estate contract was unconscionable. *Id.* at 859–61. Ultimately, the Court found the arbitration agreement to be unconscionable on two substantive bases, but did not find procedural unconscionability. *Id.* at 861. However, in so ruling, the Court did not analyze the differing view of other courts or recognize that it was overruling court of appeals cases to the contrary.

The majority and dissenting opinions disagree over the significance of *Schneider*. In this case, the majority finds that *Schneider* implies that a strong finding of substantive unconscionability alone is sufficient to invalidate an unfair contractual provision. The Chief Justice's dissent, on the other hand, believes that *Schneider* did not purport to overrule the requirement that a contractual provision must be both procedurally and substantively unconscionable and, therefore, the law articulated by the court of appeals remains effective.

I do not believe it is necessary to the holdings of either the majority or dissenting opinions to decide whether *Schneider* should be interpreted as rejecting prior court of appeals decisions holding that both procedural and substantive unconscionability are needed to invalidate an unfair contractual provision. Such a decision is unnecessary to the Chief Justice's dissent because it finds the arbitration waiver in Ms. Brewer's case to be enforceable, a conclusion with which I agree. Likewise, a decision as to whether both procedural and substantive unconscionability are needed is unnecessary to the majority opinion because the majority finds the class arbitration waiver in Ms. Brewer's case to be both procedurally and substantively unconscionable. Consequently, because it is unnecessary to the resolution of this case to determine if *Schneider* overruled prior precedent, the issue of whether substantive unconscionability alone is sufficient to invalidate a contract should be left for resolution in future cases.

I also write separately because I believe that a contract provision waiving class action arbitration, like any other contract provision, may be unconscionable under certain circumstances. However, as discussed by Chief Justice Price, the facts in this case do not support a finding of unconscionability.