Ronald MANFREDI, Respondent,

v.

**BLUE CROSS AND BLUE SHIELD OF KANSAS CITY, et al., Appellant.**

**No. WD 71150.**

Missouri Court of Appeals, Western District, En Banc.

Feb. 22, 2011.

Application for Transfer to Supreme Court Denied March 29, 2011.

Application for Transfer Denied June 28, 2011.

William E. Hanna, for Appellant.

Rex A. Sharp, for Respondent.

Before Court En Banc: LISA WHITE HARDWICK, Chief Judge, JAMES M. SMART, JR., Judge, JOSEPH M. ELLIS, Judge, VICTOR C. HOWARD, Judge, THOMAS H. NEWTON, Judge, JAMES E. WELSH, Judge, ALOK AHUJA, Judge, MARK D. PFEIFFER, Judge, KAREN KING MITCHELL, Judge, CYNTHIA L. MARTIN, Judge and GARY D. WITT, Judge.

JOSEPH M. ELLIS, Judge.

Blue Cross and Blue Shield of Kansas City and its affiliates[1] (collectively referred to as "BCBS") bring this interlocutory appeal challenging the denial of its motion to compel arbitration in an action for declaratory judgment and injunctive relief brought by Dr. Ronald Manfredi in the Circuit Court of Jackson County. BCBS argues that the court erred in determining that the arbitration clause at issue is unconscionable, in invalidating the entire arbitration provision rather than severing the offending provisions, and in finding the BCBS had waived arbitration. For the following reasons, the judgment is affirmed.

In 2002, Manfredi, a licensed chiropractor, entered into an Allied Provider Network Agreement ("the Agreement") with BCBS. The Agreement was on a form contract drafted by BCBS and presented to Manfredi on a take-it-or-leave-it basis. The Agreement set forth the terms under which Manfredi would receive payment for covered services to individuals insured by BCBS. The Agreement also included, for the first time, a mandatory arbitration provision.

In June and July 2004, BCBS notified Manfredi and other healthcare providers that, effective August 1, 2004, it would no longer be providing coverage for electrical stimulation modalities (ESM) because BCBS had decided to reclassify ESM treatments as an "investigational" treatment for pain management.

On October 17, 2005, Manfredi filed a Petition for Declaratory Judgment and Injunctive Relief against BCBS in the Cir-

1. The BCBS affiliates named in the suit are Good Health HMO, Inc.; Trillin HealthCare, Inc.: BMA Selectcare, Inc.; Epoch, Inc.; Premier WorkComp Management, L.L.C.; New Directions Behavioral Health. L.L.C.; Preferred Health Professionals, L.L.C.; and Healthy Deliveries, L.L.C.

cuit Court of Jackson County. The petition asserted that BCBS did not have the authority to eliminate coverage of services under the Agreement. He sought an injunction to prevent BCBS from eliminating covered services under the Agreement and an order mandating that BCBS restore ESM as a covered service for the treatment of musculoskeletal disorders. The petition also asked the court to declare the Agreement's binding arbitration clause unconscionable and unenforceable.

BCBS filed a timely answer and a motion to compel arbitration of Manfredi's claims. Following a hearing, the circuit court denied the motion to compel arbitration, concluding that the arbitration clause was unconscionable. The court also found that BCBS had waived its right to arbitration by failing to satisfy the one year deadline for pursuing arbitration contained in the agreement. BCBS brings this interlocutory appeal challenging the trial court's denial of its motion to compel arbitration.[2]

■ The trial court's denial of a motion to compel arbitration must be affirmed if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Woods v. QC Fin. Servs., Inc.*, 280 S.W.3d 90, 94 (Mo.App. E.D.2008). We review *de novo* the issue of whether a dispute is subject to arbitration. *Id.* "In reviewing the trial court's decision, this Court is concerned primarily with the correctness of the trial court's result, not the route taken by the trial court to reach that result." *Ruhl v. Lee's Summit Hon-*

da, 322 S.W.3d 136, 138–39 (Mo. banc 2010).

■ Where, as here, the contract relates to interstate commerce,[3] the Federal Arbitration Act (FAA) preempts the Missouri Uniform Arbitration Act (MUAA), § 435.350, RSMo 2000, on matters of substantive law. *Scharf v. Kogan*, 285 S.W.3d 362, 369 (Mo.App. E.D.2009); *Whitney v. Alltel Commc'ns. Inc.*, 173 S.W.3d 300, 306 (Mo.App. W.D.2005). "The FAA, 9 U.S.C. section 1, et seq., provides that valid arbitration agreements that affect interstate commerce must be enforced unless an exception applies." *Brewer v. Missouri Title Loans, Inc.*, 323 S.W.3d 18, 20 (Mo. banc 2010). "Nevertheless, generally applicable state law contract defenses, such as fraud, duress and unconscionability, may be used to invalidate arbitration agreements without contravening the FAA." *Swain v. Auto Servs., Inc.*, 128 S.W.3d 103, 107 (Mo.App. E.D.2003).

■ In its first point, BCBS contends that the trial court erred in finding that Manfredi's claims did not fall within the scope of the arbitration clause and that the trial court improperly refused to compel arbitration on that basis. BCBS claims that the language of the arbitration clause was broad and encompassed the claims raised by Manfredi.

■ "There is a strong presumption in favor of arbitrability, and where there is a broad arbitration provision, the trial court should order arbitration of any dispute that 'touches matters covered by the parties' contract.'" *Ruhl*, 322 S.W.3d at 139 (citation omitted). Section 9.6 of the

---

**2.** "Section 435.440.1, a part of the Missouri Uniform Arbitration Act, expressly grants the right to appeal orders denying an application to compel arbitration or granting an order to stay arbitration." *Whitney v. Alltel Commc'ns, Inc.*, 173 S.W.3d 300, 306 (Mo. App. W.D.2005) (internal quotation omitted).

**3.** Manfredi conceded that the Agreement involved interstate commerce at the trial court level.

Agreement states that, in the event of a dispute between the parties, "if . . . the dispute remains unresolved, the parties agree that they shall engage in binding arbitration in lieu of pursuing a remedy in any court of law or equity." This arbitration language is exceedingly broad, purporting to encompass any unresolved dispute. As part of the scope analysis, however, the court must also look to any exclusions or exceptions contained in the arbitration agreement. This is so because the court must construe "the arbitration clause and any contractual provisions relevant to its scope, as well as any other 'forceful evidence' suggesting that the parties intended to exclude the disputes at issue from arbitration." *Rite Aid of Penn., Inc. v. UFCW Local 1776*, 595 F.3d 128, 131–32 (3d Cir.2010). "A party cannot be compelled to arbitration unless the party has agreed to do so." *Kansas City Urology, P.A. v. United Healthcare Servs.*, 261 S.W.3d 7, 11 (Mo.App. W.D. 2008). Policies favoring arbitration are "not enough, standing alone, to extend an arbitration agreement beyond its intended scope because arbitration is a matter of contract." *Id.* Accordingly, express provisions excluding particular grievances from arbitration are enforceable. *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 429 (Mo. banc 2003).

The arbitration agreement in this case is illustrative, placing significant limitations on the arbitration process. Subsection 9.6.1 exempts from arbitration any dispute involving an allegation of medical malpractice or professional negligence of a party. Subsection 9.6.3 goes on to provide that, "where pursuant to the terms of [the] Agreement or governing law the disputed decision or determination is one which is committed to the discretion or medical judgment of either party, the arbitrators shall not disturb that decision or determination." Thus, the arbitration agreement does not allow the arbitration panel to arbitrate any dispute between the parties involving discretion or medical judgment.[4] Though couched as a limitation on the arbitrator's powers, the practical effect of this provision is to remove an entire class of disputes from the scope of the arbitration agreement. In the context of the contract between BCBS and Dr. Manfredi, the exclusion of disputes involving discretion or medical judgment goes to the very heart of the agreement and, as such, is almost as broad in its terms as is the agreement to arbitrate itself. Since all such disputes are excluded from arbitration, they are, of necessity, outside the scope of the arbitration clause.

Accordingly, as applicable to this case, in the event that BCBS was authorized under the Agreement or the governing law to, in its discretion, reclassify previously accepted treatments as experimental, any dispute over the validity of that decision would not fall within the scope of the arbitration agreement as the arbitration panel has no authority to decide such a dispute. Any claim related to such a dispute could, therefore, be brought in circuit court.

In his petition, however, Dr. Manfredi sought a declaratory judgment stating that:

> (a) The Agreements do not permit BCBSKC to eliminate as Covered Services medical procedures which it, subsequently and unilaterally, determined are investigational and experimental; and

---

4. Subsection 9.6.4 further limits the authority of the arbitrators by prohibiting the award of consequential, special, punitive, or exemplary damages.

(b) The arbitration clause contained in the Agreement is unconscionable and unenforceable.

The petition further asked the circuit court to grant injunctive relief prohibiting BCBS from violating the terms of the Agreement. Thus, Dr. Manfredi did not assert in his petition that the issues about which he complained were not within the scope of the arbitration agreement, nor did he in his suggestions in opposition to BCBS's motion to compel arbitration. Rather, while loosely referring to "scope" in the context of a breach of duty of good faith, Dr. Manfredi really never raised a scope issue.[5] Thus, the parties effectively conceded that the issues were within the scope of the arbitration agreement, and the trial court made no express finding otherwise.[6] Accordingly, and particularly in light of our conclusion, *infra*, that the trial court's judgment must be affirmed on other grounds, we assume for purposes of this appeal that the issues fall within the scope of the arbitration agreement.

 In its second point, BCBS contends that the trial court erred in finding the presence of procedural unconscionability. In its third point, BCBS claims that the trial court erred in finding various portions of the arbitration agreement substantively unconscionable. Ultimately, these points must be addressed together because the real issue is whether the trial court properly concluded that the arbitration agreement was unconscionable in general and would not be enforced.

 "An unconscionable arbitration provision in a contract will not be enforced." *Brewer*, 323 S.W.3d at 22. "There are procedural and substantive aspects to unconscionability." *Id.* "Under Missouri law, unconscionability can be procedural, substantive or a combination of both." *Id.* "Procedural unconscionability relates to the formalities of making an agreement and encompasses, for instance, fine print clauses, high pressure sales tactics or unequal bargaining positions." *Id.* "Substantive unconscionability refers to undue harshness in the contract terms." *Id.* The total degree of procedural and substantive unconscionability are considered together in determining whether an arbitration clause is generally unconscionable, though "there are cases in which a contract provision is sufficiently unfair to warrant a finding of unconscionability on substantive grounds alone." *Id.*

 Looking to the procedural unconscionability involved in the execution of the Allied Provider Network Agreement, the Agreement was presented to Manfredi on a "take-it-or-leave-it" basis. A standardized form was utilized, and the terms were non-negotiable. In addition, a large

---

5. Dr. Manfredi also offers brief arguments that the arbitration provision is severable and that BCBS has waived arbitration. In reply to the scope argument, BCBS argues that the arbitration provisions were not unconscionable. As to Dr. Manfredi's argument that his good faith claim falls outside the scope of the arbitration agreement, BCBS simply argues that the conflict between the parties is a dispute over contract interpretation subject to the arbitration provisions.

6. The trial court's Conclusions of Law contain a subsection captioned "The Arbitration Provision Does Not Apply To A Declaratory Judg-

ment Or Injunction Action To Determine whether Electrical Stimulation For Certain Pain Relief Is Investigational," but the brief discussion thereunder focuses on unconscionability. Moreover, the concluding section of the Trial Court's Interlocutory Judgment declares that "Plaintiff's *Motion for entry of Declaratory Judgment* that the arbitration provision is both procedurally and substantively unconscionable is granted." It is only after this initial decision that the judgment then states "Further, the Court concludes that the arbitration provision does not apply to the claims made in the *Petition*."

disparity existed in the bargaining power of the parties. BCBS was the largest health insurer in the Kansas City area, providing health insurance for more than 880,000 members—about 44% of the population of the metropolitan area. Manfredi was one of 2,500 to 3,000 non-physician, healthcare providers in the metropolitan area offered the agreement on a take-it-or-leave-it basis with no possibility of negotiating any of the terms. Manfredi stated in his sworn affidavit that he could not afford not to sign the Agreement. Given their relative sizes and BCBS's market share, Manfredi had no negotiating leverage or other reasonable option aside from accepting the contract. The level of procedural unconscionability present in this case rises to such heights that the Agreement can only be characterized as a contract of adhesion.[7] *See State ex rel. Vincent v. Schneider,* 194 S.W.3d 853, 857 (Mo. banc 2006).[8]

BCBS argues (1) that a pre-printed contract is not, in and of itself, procedurally unconscionable, (2) that a lack of negotiations is not, in and of itself, procedurally unconscionable, and (3) that the arbitration provision was not unconscionably hidden. In making its argument, BCBS emphasizes individual aspects of procedural unconscionability, but it fails to address the totality of the evidence of procedural unconscionability. Moreover, BCBS frequently views the evidence in the light most favorable to itself in disregard of our standard of review.

▮▮▮▮▮ The simple inclusion of a general agreement to arbitrate in a contract of adhesion may not, in and of itself, warrant voiding the arbitration provision under the FAA.[9] But substantively unconscionable provisions in such an agreement may render requiring arbitration unconscionable.[10] "Substantive unconscionability concerns the actual terms of the contract and exam-

---

**7.** Were this case governed by the MUAA instead of the FAA, our analysis would end here as § 435.350 of the MUAA provides that arbitration provisions contained in contracts of adhesion are not valid or enforceable. Section 435.350 "cannot [,however,] be applied to circumvent a FAA-enforceable arbitration provision" where the MUAA has been preempted by federal law. *Kirby v. Grand Crowne Travel Network, LLC,* 229 S.W.3d 253, 255 (Mo.App. S.D.2007).

**8.** As described by the Missouri Supreme Court:

> A contract of adhesion, as opposed to a negotiated contract, is a form contract that is created and imposed by the party with greater bargaining power. The "stronger party" has more bargaining power than the "weaker party," often because the "weaker party" is unable to look elsewhere for more attractive contracts. The "stronger party" offers the contract on a "take this or nothing" basis. The terms of the contract are imposed on the weaker party and unexpectedly or unconscionably limit the obligations and liability of the stronger party.

*State ex rel. Vincent v. Schneider,* 194 S.W.3d 853, 857 (Mo. banc 2006) (internal citations and quotations omitted).

**9.** *See Whitney v. Alltel Commc'ns., Inc.,* 173 S.W.3d 300, 310 (Mo.App. W.D.2005).

**10.** Even were this not a contract of adhesion, the aspects of procedural unconscionability present would need to be given weight in the overall analysis of whether or not the arbitration provisions are unconscionable. *See Ruhl v. Lee's Summit Honda,* No. WD 70189, 2009 WL 3571309, at * 5 (Mo.App. W.D., Nov.3, 2009) (holding that, although the evidence was insufficient to prove a contract of adhesion, "there were still aspects of procedural unconscionability because the contract was pre-printed and manifested the unequal bargaining power between [the parties]"); *see also Brewer v. Missouri Title Loans, Inc.,* No. ED 92569, 2009 WL 4639899, at *2 (Mo.App. E.D., Dec.8, 2009) (holding superior bargaining position, take it or leave it contract, and the need to enter the contract by the party with less bargaining power was sufficient to support a finding of procedural unconscionability).

ines the relative fairness of the obligations assumed at the time the contract was made." *Woods,* 280 S.W.3d at 96. Substantive unconscionability is indicated where the contract terms are so one-sided as to be oppressive or there is an overall imbalance in the rights and obligations imposed. *Brewer,* 323 S.W.3d at 22. When evaluating the substantive conscionability of a form contract, we are to consider the reasonable expectation of the average person. *Id.* at 23.

While a general arbitration agreement might have been capable of enforcement, the provisions adjusting and limiting this agreement to arbitrate are clearly unconscionable. First, Paragraphs 9.6 and 9.6.1 of the arbitration clause provide:

> In the event of a dispute between [BCBS] and Allied Provider, the parties agree that they shall abide by the procedures, processes and remedies set forth in this Agreement *or otherwise established by BCBS for disputes of that type* .... [The dispute] shall be submitted to binding arbitration in accordance with the rules of the American Arbitration Association *or other national ADR association acceptable to [BCBS].*

(Emphasis added.) Paragraph 8.1 further provides: "Except as specified herein, this Agreement or an Addendum or Attachment may be amended by [BCBS] upon ninety (90) days prior written notice to Allied Provider." These provisions grant BCBS unfettered discretion to unilaterally create, control, and alter the arbitration process. They would allow BCBS to disregard the standard rules of the American Arbitration Association, select the rules of any other ADR association, and unilaterally establish new procedures and remedies contrary to those specified in the Agreement. While BCBS argues that these provisions are not unconscionable because it has yet to take advantage of them, the

issue is whether the provisions were unconscionable when the Agreement was executed.

The arbitration provision in this case, in addition to allowing BCBS to unilaterally alter or avoid the arbitration procedures, clearly precludes review of a certain class of disputes and unfairly favors BCBS. Paragraph 5.14 of the Agreement states that providers have the right to "appeal any [BCBS] decision made in conjunction with the agreement." Paragraph 9.6 states that if, after going through whatever procedural steps are established by BCBS, a "dispute remains unresolved, the parties agree that they shall engage in binding arbitration in lieu of pursuing a remedy in any court of law or equity." However, as noted *supra,* Paragraph 9.6.3, creates an exception that denies review by the arbitration panel "where pursuant to the terms of this Agreement or governing law the disputed decision or determination is one which is committed to the discretion or medical judgment of either party." Thus, the arbitration mandated by the Agreement is purely illusory with regard to disputes involving discretion or medical judgment. As noted by the trial court, this class of disputes comprises a large portion of the disputes that might arise between BCBS and the providers. In addition, the arbitration provision provides that "arbitrators are not authorized to award consequential, special, punitive or exemplary damages." Though BCBS argues that Dr. Manfredi sought only declaratory relief and that this provision is not implicated in this controversy, that argument again fails to view the conscionability of the provision at the time the Agreement was executed.

While an ordinary person could reasonably expect general arbitration provisions in an adhesion contract, an ordinary person would not reasonably expect provisions

that allow the other party to unilaterally revise the arbitration rules, render the arbitrator powerless to resolve a large class of claims, or fail to provide an adequate remedy for the dispute. The practical effect of these provisions is to grant BCBS immunity for improper conduct in declaring procedures medically unnecessary [11] or, as in this case, re-categorizing a treatment as medically experimental and, therefore, not subject to reimbursement. While purporting to provide a remedy for disputes between the parties through arbitration, the limitations placed on the arbitrators' authority prevent arbitration from providing much, if any, remedy at all. As noted by the trial court, "[t]he arbitrators are rendered practically powerless and arbitration is effectively no remedy at all." Where, as here, the practical effect of forcing a case to arbitration would be to deny the injured party a remedy, requiring the case to be arbitrated is unconscionable. *Brewer*, 323 S.W.3d at 21–22.

When considered together, the aspects of procedural and substantive unconscionability present herein establish that the arbitration agreement was generally unconscionable.

In its fourth point, BCBS claims that, if any provisions were indeed unconscionable, the trial court erred in failing to sever the unconscionable provision or provisions and order arbitration. "Whether a contract is severable ... depends on the circumstances of the case and is largely a question of the parties' intent." *Shaffer v. Royal Gate Dodge, Inc.*, 300 S.W.3d 556, 561 (Mo.App. E.D.2009) (internal quotation omitted).

As noted *supra*, we are dealing with an arbitration provision in a contract of adhesion that allows for unilateral alteration or avoidance of the arbitration procedures by BCBS, the party that drafted the contract, and which excludes a large percentage of disputes that could arise under the contract. Accordingly, we are left to conclude that such claims are properly brought in a court of law. Under the totality of the circumstances, considering the procedurally and substantively unconscionable aspects in play, the arbitration provision as a whole is unconscionable. Point denied.

In its final point, BCBS contends that the trial court erred in finding that it had waived its right to pursue arbitration by failing to initiate arbitration within the time limitation prescribed by the Agreement. In this regard, the Paragraph 9.6.1 states:

> The party invoking the right to arbitration shall, no less than thirty (30) days prior to commencing arbitration proceedings, give written notice to the other party of the precise nature of the dispute. If the dispute remains unresolved, ... it shall be submitted to binding arbitration.... In no event may arbitration be initiated more than one year following the sending of written notice of the dispute.

Having concluded that the arbitration provision is unconscionable and should be struck in its entirety, we need not determine the effect of this time limitation.[12]

For the foregoing reasons, the trial court's denial of BCBS's motion to compel arbitration is affirmed.

---

11. The Agreement provides that the "medical necessity" of services and supplies "will be determined by BCBS physician reviewers or their authorized physician designee (at their discretion)" and that anything deemed not medically necessary will not be covered.

12. Had the arbitration provision been salvageable, resolution of the effect of the time limitation would be for the arbitrator and not the court. *Boulds v. Dick Dean Econ. Cars, Inc.*, 300 S.W.3d 614, 620 (Mo.App. E.D. 2010).

HOWARD, NEWTON, PFEIFFER, MARTIN and WITT, JJ., concur.

WELSH, J. concurs in separate concurring opinion filed, in which HARDWICK, C.J., SMART and MITCHELL, JJ., concur.

AHUJA, J. concurs in separate concurring opinion filed.

JAMES EDWARD WELSH, Judge.

As the majority notes, § 9.6.3 of both the Participation and Network Agreements between Blue Cross and Dr. Manfredi contains the following limitation:

> [W]here pursuant to the terms of this Agreement or governing law the disputed decision or determination is one which is committed to the discretion or medical judgment of either party, the arbitrators shall not disturb that decision or determination.

In my view, this provision removes the current dispute from the scope of the parties' agreement to arbitrate and therefore mandates affirmance, without consideration of issues of unconscionability. I accordingly concur in the result.

The present dispute plainly concerns a matter "committed to the discretion or medical judgment of" Blue Cross "pursuant to the terms of [the parties'] Agreement[s]." Both the Participation and Network Agreements specify that Blue Cross is only obligated to reimburse Dr. Manfredi for his performance of "Covered Services" on insured individuals. The Network Agreement specifies that, in order to constitute "Covered Services," particular services must be "Medically Necessary," meaning that such services "are essential to the health of the Covered Individual for the diagnosis or care and treatment of a medical or surgical condition." Among other things, in order to be considered "Medically Necessary" the services must be "consistent with acceptable medical practice according to the national Blue Cross and Blue Shield Association's uniform medical policy, as amended from time to time." The Agreement also provides that "[a] [Blue Cross] medical director or his/her authorized physician designee is the only person who may make a determination that a service or supply is not Medically Necessary."[1] Blue Cross's decision to cease coverage of electrical stimulation modalities was explicitly based on its determination that such services are not "Medically Necessary": its announcement letter states that the coverage change is due to the fact that "[t]he current policy of the [Blue Cross and Blue Shield] Association states that transcutaneous electrical nerve stimulation is considered investigational for the management of" particular types of pain.

By denying the arbitrators the authority to resolve any dispute over a decision which is "committed to the discretion or medical judgment of either party" (what I dub a "discretionary determination"), § 9.6.3 wholly removes such disputes from the scope of the arbitration clause. The majority essentially recognizes that § 9.6.3 has the effect of removing discretionary determinations from the scope of arbitrable disputes, since it observes that, "[t]hough couched as a limitation on the arbitrator's powers, the practical effect of this provision is to remove an entire class of disputes from the scope of the arbitration agreement."

1. The provisions of the Network Agreement addressing medical necessity are primarily directed toward case-specific determinations made in the context of the treatment of individual patients. However, the provisions specifying that "Covered Services" must be "Medically Necessary," and that the determination of medical necessity is vested in Blue Cross's medical personnel, are equally applicable to the present dispute.

To the extent the parties did not agree that disputes over discretionary determinations would be resolved by arbitration, that should end the matter: in the absence of an agreement to arbitrate such disputes, arbitration obviously cannot be compelled. *See Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, — U.S. —, 130 S.Ct. 1758, 1773, 176 L.Ed.2d 605 (2010) ("[T]he [Federal Arbitration Act] imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.'" (citation omitted)); *Kansas City Urology, P.A. v. United Healthcare Servs.*, 261 S.W.3d 7, 11 (Mo.App. W.D.2008) (en banc) ("A party cannot be compelled to arbitration unless the party has agreed to do so.").

The majority avoids this result by concluding that Dr. Manfredi has not argued that the present dispute falls outside the scope of the arbitration clause, and that the trial court did not rule on this basis. But as the majority recognizes, under our standard of review we are "concerned primarily with the correctness of the trial court's result, not the route taken by the trial court to reach that result." *Ruhl v. Lee's Summit Honda*, 322 S.W.3d 136, 138–39 (Mo. banc 2010). Whether or not the issue was decided below, or argued here, should be irrelevant when the issue is plain on the face of the record. In any event, I disagree with the majority's characterization of the proceedings below. A section of the trial court's interlocutory judgment is headed, "The Arbitration Provision Does Not Apply To A Declaratory Judgment or Injunction Action To Determine Whether Electrical Stimulation For Certain Pain Relief is Investigational."

Under that heading, the trial court concludes that the discretionary determination language of § 9.6.3 "prevent[s] arbitrators from considering the electrical stimulation issues involved here." The conclusion of the court's interlocutory judgment repeats its determination "that the arbitration provision does not apply to the claims made in the Petition," although the court's judgment *also* finds the arbitration clause procedurally and substantively unconscionable "even if this dispute is within the scope of the provision." On appeal, Dr. Manfredi specifically argues that "[t]he circuit court properly found this dispute outside the scope of the arbitration provision," in addition to defending the trial court's finding of unconscionability. In these circumstances, the scope of the arbitration provision, and § 9.6.3's impact on that scope, is properly before us.

The circuit court could not compel arbitration where the parties' arbitration agreement specifically excludes disputes like the present one. Consideration of the scope of the agreement to arbitrate requires affirmance and renders any discussion of unconscionability unnecessary.[2] I accordingly concur in the result.

ALOK AHUJA, Judge.

As both the majority and Judge Welsh's concurring opinion recognize, § 9.6.3 of the agreements between Blue Cross and Dr. Manfredi is plausibly construed to remove disputes like the present one from the scope of the arbitration clause. As Judge Welsh explains, without an agreement to arbitrate such disputes, the trial court had

**2.** When no lesser authority than the United States Supreme Court has admonished us that the "[Federal Arbitration Act] reflects 'emphatic federal policy in favor of arbitral dispute resolution,'" *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 729, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)), we ought not to volunteer a finding of unconscionability when it is not required by the case before us.

no power to compel arbitration, and its refusal to do so must be affirmed.

Given its wording, § 9.6.3 can also be read as a limitation on the arbitrator's remedial authority, rather than as a limit on the range of disputes subject to arbitration. Affirmance would still be required.

Even if a matter is "committed to [Blue Cross'] discretion or medical judgment" by the parties' agreements, Blue Cross nevertheless has an obligation to exercise its discretion in good faith. *See, e.g., City of St. Jos. v. Lake Contrary Sewer Dist.,* 251 S.W.3d 362, 369–70 (Mo.App. W.D.2008); *Mo. Consol. Health Care Plan v. Cmty. Health Plan,* 81 S.W.3d 34, 46–47 (Mo. App. W.D.2002). To the extent § 9.6.3 wholly eliminates the arbitrators' power to resolve disputes over discretionary determinations—while simultaneously denying Dr. Manfredi any *other* forum to address such claims—it would effectively immunize Blue Cross from liability for its bad-faith exercise of discretion or medical judgment. In the circumstances of this case, such a result would be substantively unconscionable, and therefore unenforceable.[1] Numerous Missouri decisions hold that an arbitration clause which has the effect of rendering a contracting party wholly immune from liability for material breaches of its contractual obligations is substantively unconscionable.[2] As the majority notes, disputes over discretionary determinations undoubtedly represent a significant share of the disagreements which could arise under the agreements at issue here, and such matters thus "go[ ] to the very heart" of those agreements. Given the centrality of discretionary determinations to the parties' business relationship,

---

1. Contrary to Blue Cross' argument, this Court has the authority to interpret and apply § 9.6.3, even if it is read as a limitation on the arbitrators' remedial authority, to the extent necessary to determine the arbitration provision's validity. *See, e.g., Puleo v. Chase Bank USA, N.A.,* 605 F.3d 172 (3d Cir.2010) (en banc); *Woods v. QC Fin. Servs., Inc.,* 280 S.W.3d 90, 96 (Mo.App. E.D.2008). Indeed, *Brewer, Ruhl* and the other cases cited in note 2 base their findings of substantive unconscionability on remedial limitations in the arbitration clauses at issue there: prohibitions of class arbitration of claims, or limitations on recoverable damages.

2. *See, e.g., Brewer v. Missouri Title Loans, Inc.,* 323 S.W.3d 18, 24 (Mo. banc 2010) (class-action waiver in arbitration clause substantively unconscionable where "the net result of the waiver is that the lender effectively is immunized from liability"); *Ruhl v. Lee's Summit Honda,* 322 S.W.3d 136, 140 (Mo. banc 2010) (finding class-action waiver in arbitration clause substantively unconscionable where enforcement of provision "would immunize Honda from individual consumer claims, ... and allow it to continue in its alleged deceptive practices ..."); *Shaffer v. Royal Gate Dodge, Inc.,* 300 S.W.3d 556, 559–60 (Mo.App. E.D.2009) (finding class-action waiver substantively unconscionable; "Royal Gate's arbitration agreement effectively immunizes it from liability for its allegedly improper practice of charging customers a processing fee for document preparation because the expense of pursuing a claim in individual arbitration far exceeds ... the potential damages available...."); *Woods v. QC Fin. Servs., Inc.,* 280 S.W.3d 90, 98 (Mo.App. E.D.2008) (finding class-action waiver provision substantively unconscionable where "[i]ndividualizing each claim absolutely and completely insulates and immunizes Appellant from scrutiny and accountability"); *Whitney v. Alltel Communics., Inc.,* 173 S.W.3d 300, 314 (Mo. App. W.D.2005) (class-action waiver and limitations on punitive and consequential damages substantively unconscionable, because those provisions "would effectively strip consumers of the protections afforded to them under the Merchandising Practices Act and unfairly allow companies like Alltel to insult themselves from the consumer protection laws of this State").

The Supreme Court's recent decisions make clear that it is not always necessary to find aspects of both substantive and procedural unconscionability before invalidating an arbitration provision. *Brewer,* 323 S.W.3d at 22; *Ruhl,* 322 S.W.3d at 139 n. 2.

an arbitration provision which has the effect of denying a party *any* remedy for the other party's abuse of its contractual authority is oppressive, inconsistent with Dr. Manfredi's reasonable expectations, and accordingly unenforceable.[3]

It is noteworthy that, in May 2006 (seven months after Dr. Manfredi filed this action), Blue Cross sought to amend § 9.6.3 to provide that the arbitrators "shall not disturb" discretionary determinations only if those decisions were *"made in the good faith exercise of such discretion."* Blue Cross has not argued that this amendment is applicable here. Although inapplicable, the 2006 amendment underscores that the earlier version of § 9.6.3 immunized Blue Cross from arbitral review of its discretionary determinations, even against a claim that it had exercised its discretion in bad faith.

Blue Cross also argues that any unconscionable provisions of the arbitration clause should be severed, and the remainder enforced. Section 9.6.3, however, has the effect of excluding from arbitration a large percentage of the disputes which could arise under the agreements. Enforcing arbitration without this exclusion would fundamentally alter the nature of the parties' agreement to arbitrate. This provision is not severable from the remainder of the arbitration clause.

Whether § 9.6.3 takes Dr. Manfredi's claims outside the scope of the arbitration clause, or denies Dr. Manfredi any remedy for such claims, the result is the same: the circuit court properly refused to compel arbitration. I accordingly concur in the result.

---

3. Blue Cross does not argue that § 9.6.3 should be read as an exculpatory clause, and

upheld on that basis. *See Brewer,* 323 S.W.3d at 24.